[No. H032881. Sixth Dist. July 31, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
ROGELIO CASTRO GUERRA, Defendant and Appellant.

934

## COUNSEL

Robert Derham, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Seth K. Schalit, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DUFFY, J.**—A jury convicted the defendant herein, Rogelio Castro Guerra, of sex crimes against his daughter and another minor. The jurors initially found untrue five enhancement allegations that multiple victims were involved. After the trial court told the jurors that the verdicts were inconsistent and that the jury might wish to "reconsider" them and "should" find the allegations true if it found the predicate fact of multiple victims true, the jury did reconsider the allegations and found them true. Defendant contends on appeal that the trial court invaded the jury's province. We agree, and we will reverse the true findings on the enhancement allegations (but otherwise affirm the judgment) and remand the case for resentencing.

### BACKGROUND

I.   *Convictions and Sentence*

Because defendant's appeal pertains only to the trial court's interactions with the jury following its verdict finding an enhancement allegation untrue,

the facts may be briefly summarized. Defendant sexually molested his daughter and another girl. Counts 1 through 7 contained accusations involving his daughter, whereas the eighth count contained an accusation regarding the other girl.

On counts 1 through 7, the jury found defendant guilty of two counts of aggravated sexual assault on a child less than 14 years old and at least 10 years younger than defendant (Pen. Code, former § 269; Stats. 1994, 1st Ex. Sess. 1993–1994, ch. 48, § 1, p. 8761),[1] one count of forcible oral copulation (§ 288a, subd. (c)(2)), and four counts of forcible lewd or lascivious acts on a child less than 14 years old (§ 288, subd. (b)(1)). To reiterate, all of these charges involved crimes against defendant's own daughter. The jury also found defendant guilty on the eighth count, a charge of nonforcible lewd or lascivious act on a child under 14 (§ 288, subd. (a)). That count charged the crime against the other girl.

Counts 3 through 8 each contained an enhancement allegation under the "One Strike" law that "in the present case and cases" defendant committed an offense against more than one victim. (See § 667.61, subds. (b), (c), (e).) Eventually the jury found the allegations to be true.

Defendant received a sentence of 120 years to life imprisonment.

II. *Proceedings Following the Jurors' Return of Their Verdict*

Originally, the jurors returned verdicts of guilty on all eight counts but "unanimously" found not true, as relevant here, the five enhancement allegations under section 667.61.

On receiving the verdicts the trial court noted a possible inconsistency and immediately turned its attention to the problem:

"THE COURT: Thank you. Ladies and gentlemen, is that your verdict? Thank you. Counsel, please approach.

"(The following discussion was held at sidebar.)

"THE COURT: It appears that there is an inconsistency in the verdict, because the allegations were found not true.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

"MS. McGUIRE [the prosecutor]: So they have to be polled.

"THE COURT: That is the next question. What should we do about it, if anything?

"MR. CLIFT [defense counsel]: I don't think we can poll them. Inconsistent verdicts are not uncommon.

"MS. McGUIRE: It is inconsistent. I don't know if on appeal—what if they meant not guilty? Either way, they are not consistent. Either they thought he was not guilty—I thought that count eight was going to be not guilty.

"THE COURT: That is, of course, what everybody thought.

"MS. McGUIRE: But if count eight is guilty, maybe they meant for count eight to be not guilty and say there is not more than one victim.

"THE COURT: What do you want me to do?

"MS. McGUIRE: Make an inquiry before they are recorded, please.

"MR. CLIFT: I don't—an inconsistent verdict just happens all the time; so that's their verdict.

"THE COURT: I'm prepared to inquire whether or not they see an inconsistency in the verdict.

"MS. McGUIRE: Please.

"THE COURT: And if they do, to explain. I will ask the foreperson, and we'll see what we get.

"MS. McGUIRE: Okay. Thank you.

"(The following proceedings were held in open court.)

"THE COURT: Ladies and gentlemen—actually, I'll direct this question to the foreperson. [¶] It appears to the court that there may be an inconsistency in the verdict. [¶] Counts one through seven are for the counts having to do

with [the daughter], and count eight was the count that had to do with [the other girl]. The jury found the defendant guilty on all eight counts, but with respect to the additional allegation, they found it wasn't true that there were two victims involved. [¶] That appears, at first blush, inconsistent to the court, so I wanted to ask you whether I have misinterpreted either the verdict with respect to count eight or the findings with respect to the allegation. [¶] Madam foreperson?

"JUROR NUMBER FOUR: I think we misunderstood how to fill out the form. [¶] We did find guilty on all eight counts. As to whether there was more than one victim, we thought that meant that one specific charge, that one count.

"THE COURT: I understand what you're saying. Counsel, will you please approach?

"(The following discussion was held at sidebar.)

"THE COURT: It's hard for me to see that interpretation that they gave it, but if that was in fact the interpretation, they should be given the opportunity to change it.

"MS. McGUIRE: If they so desire, because case and cases means all the counts. So long as they know. If it's not, they don't have to, but if that was their interpretation, they could be fully recorded. I do think that would be appropriate, your honor.

"MR. CLIFT: The defense attorney objects.

"THE COURT: I understand. Would you like to state anything for the record?

"MR. CLIFT: Yeah. That they reached their conclusion. The verdict forms are signed and dated, and inconsistent jury verdicts are not uncommon. They have been recorded, and so just an objection on those grounds.

"THE COURT: Thank you.

"THE COURT: I'm going to ask the clerk to give me the verdict forms back, I will pass them to the foreperson and let the foreperson correct them, then we'll reread the allegations with respect to each count as corrected. Then we'll ask the jury if that's their verdict.

"MR. CLIFT: Are you going to reinstruct them regarding the law and what their confusion is?

"MS. McGUIRE: You mean [CALCRIM No.] 3181?

"MR. CLIFT: Yeah.

"MS. McGUIRE: It's in the packet, 3181. You can send them back or read it out loud on the record and have them do it here on the record. Either way is fine.

"(The following proceedings were held in open court.)

"THE COURT: At this time I'll ask the clerk to hand me back the verdict forms. [¶] Ladies and gentlemen of the jury, I'm going to reread the instruction which is labeled 3181, and it reads as follows:

"[']If you find the defendant guilty of two or more of the sex offenses as charged in counts eight and[']—sorry, counts three through eight, [']and/or two or more of the sex offenses as charged in Counts Four through Eight, you must then decide whether the people have proved the additional allegations that the crimes were committed against more than one victim. [¶] Two or more sex crimes charged in Counts Three through Eight against more than one victim are within the meaning of Penal Code section 667.61(b), (c) and (e), two or more sex crimes charged in Counts Four through Eight against more than one victim are within the meaning of Penal Code section 1203.066(a)(7).

"[']The people have the burden of proving these allegations beyond a reasonable doubt. If the people have not met this burden, you must find these allegations have not been proved.['] [¶] Reading one of the allegations from the verdict form, it reads: [']we further unanimously find the defendant, Rogelio Castro Guerra, in the present case and cases committed an offense specified[']—[¶] and it refers to section number, [']against more than one victim within the meaning of Penal Code['], and it refers to the section numbers, [']is true or not true.'

"The instructions and the verdict form would indicate to the court that if in the case being tried before you there is more than one victim that the defendant has been convicted of sexually assaulting as charged, that the answer to those allegation questions should be true. [¶] If, based upon this

clarification, the jury wishes to change its findings with respect to one or more of those allegations, I'll give you the opportunity to do so, and I'm going to ask the bailiff to take the verdict forms from me at this time and hand them back to the foreperson of the jury. [¶] I will ask, would you like to go back into the jury room to discuss that?

"JUROR NUMBER FOUR: Yes, sir. We misunderstood.

"THE COURT: Very well. [¶] I'll excuse the jury in the company of the bailiff to return to the jury deliberation room to reconsider the findings on those allegations.

"JUROR NUMBER 11: As I understand, you're saying if we believe that in these cases there's a guilty verdict, we must find that there was more than one victim?

"THE COURT: It appears to the court that it's inconsistent to find guilty on count eight and guilty on one of the counts or all of the counts one through seven and not find that there were two victims, since count eight refers to [the other girl] and counts one through seven refer to [defendant's daughter].

"JUROR NUMBER 11: My interpretation was that neither of these cases with [the two girls] overlapped in time; therefore, at any given time there was only one victim. [¶] That's not a correct interpretation?

"THE COURT: No. The interpretation is whether in this case that's before you there is more than one victim. I'll let you go back with the bailiff and then you can advise me when you have reconsidered. [¶] We'll be in recess.

"(A brief recess was taken.)

"THE COURT: We're back in session in People vs. Guerra.

"The record will indicate that the jury is present, the attorneys are present, and the defendant is present, being assisted by an interpreter. [¶] Madam foreperson, has the jury now completed its verdict?

"JUROR NUMBER FOUR: Yes, your honor, we have.

"THE COURT: If you'll hand the verdict forms to the bailiff, please. [¶] I'll hand the verdict forms to the clerk and ask the clerk to read the verdict."

The jury returned new verdicts. This time it found defendant guilty on all eight counts and as relevant here, found true the enhancement allegations under section 667.61 with regard to counts 3 through 8.

## DISCUSSION

Defendant challenges the trial court's intercession with the jury, claiming that the court's invitation to the jurors to reconsider their not true verdict on the section 667.61 enhancement allegation invaded the jury's province in violation of state law (see § 1161) and federal constitutional guaranties. With regard to the latter, he claims violations of the due process guaranties contained in the Fifth and Fourteenth Amendments to the United States Constitution, the Sixth Amendment's guaranty of a right to a jury trial, and the prohibition against being placed twice in jeopardy found in the Fifth Amendment, as applied to him under the Fourteenth Amendment.

The People assert that "Were there an acquittal, the court would have been barred from doing anything other than record the verdict. But there was not an acquittal." They posit that because the verdict was inconsistent, it did not amount to an unequivocal acquittal but was uncertain.

Defendant argues that although the verdict was inconsistent, the trial court exceeded its authority in attempting to resolve the inconsistency, ultimately directing the result.

The trial court was presented with a difficult situation and we do not fault it for attempting to remedy the complication that arose when the jurors returned an inconsistent verdict. We are constrained to conclude, however, that since there was an acquittal in open court[2] defendant is entitled to have the jury's later true findings on those enhancement allegations reversed.

When the jurors reach their verdicts and return to the courtroom "they must be asked by the Court, or Clerk, whether they have agreed upon their verdict, and if the foreman answers in the affirmative, they must, on being required, declare the same." (§ 1149.) The process is complete, however, only after "the verdict given is receivable by the court" (§ 1164, subd. (a)) and the court clerk has recorded it on the minutes (*ibid.*).

In the interim, a number of complications can arise and the statutes direct how such difficulties are to be addressed. Section 1161 is relevant to this case: "When there is a verdict of conviction, in which it appears to the Court that the jury have mistaken the law, the Court may explain the reason for that opinion and direct the jury to reconsider their verdict, and if, after the reconsideration, they return the same verdict, it must be entered; but when there is a verdict of acquittal, the Court cannot require the jury to reconsider

---

[2] To be precise, the jurors rendered not true verdicts on enhancement allegations rather than acquittal verdicts on charges of substantive offenses, but the People do not dispute that the two are equivalent for purposes of this case.

it. If the jury render a verdict which is neither general nor special, the Court may direct them to reconsider it, and it cannot be recorded until it is rendered in some form from which it can be clearly understood that the intent of the jury is either to render a general verdict or to find the facts specially and to leave the judgment to the Court."[3]

■ The Penal Code sections describing the manner of receiving, accepting, and recording verdicts rest on venerable common law principles. "Jury decision-making is designed to be a black box: the inputs (evidence and argument) are carefully regulated by law and the output (the verdict) is publicly announced, but the inner workings and deliberation of the jury are deliberately insulated from subsequent review. Judges instruct the jury as to the law, but have no way of knowing whether the jurors follow those instructions. Judges and lawyers speak to the jury about how to evaluate the evidence, but cannot tell how the jurors decide among conflicting testimony or facts. Juries are told to put aside their prejudices and preconceptions, but no one knows whether they do so. *Juries provide no reasons, only verdicts*." (*U.S. v. Benally* (10th Cir. 2008) 546 F.3d 1230, 1233, italics added.)

To say the least, "the internal operations of a jury are rarely subject to scrutiny . . . ." (*People v. Davis* (1988) 202 Cal.App.3d 1009, 1015 [249 Cal.Rptr. 198].) As a rule, courts may not embark on "speculation into what transpired in the jury room." (*Yeager v. United States* (2009) 557 U.S. ___, ___ [174 L.Ed.2d 78, 129 S.Ct. 2360, 2368].) Thus, the state has no remedy when a jury acquits "in the teeth of both law and facts." (*Horning v. District of Columbia* (1920) 254 U.S. 135, 138 [65 L.Ed. 185, 41 S.Ct. 53], disapproved on other grounds in *United States v. Gaudin* (1995) 515 U.S. 506, 520 [132 L.Ed.2d 444, 115 S.Ct. 2310].) "If what went on in the jury room were judicially reviewable for reasonableness or fairness, trials would no longer truly be by jury, as the Constitution commands. Final authority would be exercised by whomever is empowered to decide whether the jury's decision was reasonable enough, or based on proper considerations. Judicial review of internal jury deliberations would have the result that 'every jury verdict would either become the court's verdict or would be permitted to stand only by the court's leave.' [Citation.]" (*U.S. v. Benally, supra*, 546 F.3d at p. 1233.)

Those precepts are observed strictly enough in California that the law does not allow jurors to impeach even their own verdicts by giving accounts of their reasoning in other judicial proceedings. (Evid. Code, § 1150, subd. (a).)

---

[3] The question of the trial court's authority to compel the jury to clarify a verdict because it is unclear whether it is special or general is not at issue here. (See §§ 1150, 1152 [explaining the difference between a general and a special verdict].) The jury here rendered a general verdict as it was required to do in the circumstances of the case. (See § 1150.)

In particular, " ' "evidence of what the juror 'felt' or how he understood the trial court's instructions is not competent." ' " (*People v. Lindberg* (2008) 45 Cal.4th 1, 53 [82 Cal.Rptr.3d 323, 190 P.3d 664].)

Sometimes, of course, this system frays, as in the case of the inconsistent verdicts here. If lenity or compromise did not figure into the jury's initial verdicts, then it is likely that the problem arose because the instructions were unclear, as occurred in *Bigelow v. Superior Court* (1989) 208 Cal.App.3d 1127, 1133 [256 Cal.Rptr. 528].

■ Section 1161 directs, in line with the foregoing legal principles, that when a problem arises the court's intrusion into the jury's time-honored and fundamental role must be limited. A jury's verdict of acquittal or not true may not be questioned by anyone else or in any other forum, and a trial court may not probe further into the jury's deliberations. "As a general rule, inherently inconsistent verdicts are allowed to stand. [Citations.] For example, 'if an acquittal of one count is factually irreconcilable with a conviction on another, *or if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense*, effect is given to both.' [Citation.]" (*People v. Avila* (2006) 38 Cal.4th 491, 600 [43 Cal.Rptr.3d 1, 133 P.3d 1076], italics added.) The system accepts the possibility that "the jury arrived at an inconsistent conclusion through 'mistake, compromise, or lenity.' [Citation.]" (*Ibid.*)

Here, as the parties and the trial court were discussing the verdicts they thought of two possibilities: that the jurors meant to acquit defendant of molesting the girl who was not defendant's daughter, i.e., the victim in count 8, or that the jurors did not understand the "in the present case and cases" instructional language regarding the enhancement allegations. If the parties and court thought of other possibilities, such as a compromise verdict or a desire by the jurors to exercise lenity, the record does not reflect it. "I wanted to ask you whether I have misinterpreted either the verdict with respect to count eight or the findings with respect to the allegation," the court said to the jurors. The jury foreperson explained, "I think we misunderstood how to fill out the form. [¶] We did find guilty on all eight counts. As to whether there was more than one victim, we thought that meant that one specific charge, that one count." Then the court invited the jurors to "go back into the jury room to discuss that" and "return to the jury deliberation room to *reconsider* the findings on those allegations." (Italics added.)

Given the formality of the setting of a superior court, over which the trial judge presides in a commanding display of authority, and in light of the jurors' respectful and deferential tone toward the trial court as everyone discussed the inconsistent verdict, it is possible to interpret the court's

invitation to reconsider the findings as something akin to an order from the jurors' perspective. Reviewing courts have acknowledged these legal and sociological facts in stating that " 'We presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade.' " (*People v. Thornton* (2007) 41 Cal.4th 391, 441 [61 Cal.Rptr.3d 461, 161 P.3d 3].) So it is no surprise than when the court asked, "would you like to go back into the jury room to discuss that?" the jury foreperson, without, as far as this record discloses, asking any other juror for an opinion, immediately replied, "Yes, sir. We misunderstood."

■ To protect defendant's right under section 1161 that "when there is a verdict of acquittal, the Court cannot require the jury to reconsider it," while also protecting defendant's right under the same statute not to be convicted of molesting the second victim if the jury had intended to find him not guilty on that count, the trial court should have granted the prosecutor's request to poll the jurors. (See § 1163.) If each answered that the verdicts and findings reflected the juror's individual verdicts and findings, then the court's task was complete under section 1161—the jury had rendered inconsistent verdicts and the court was required to accept and record all of them, thereby satisfying the rule that " 'if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense, effect is given to both.' [Citation.]" (*People v. Avila, supra*, 38 Cal.4th at p. 600.)

Instead, the trial court impermissibly invited the jury to "reconsider" its not true findings and allowed the jurors to deliberate anew. This was in excess of its authority; after the jury returned not true findings as to the five enhancement allegations, "the trial court could not resubmit [those] matter[s] to the jury for further deliberation." (*Bigelow v. Superior Court, supra*, 208 Cal.App.3d at p. 1136.)

The People assert that under *Bigelow v. Superior Court, supra*, 208 Cal.App.3d 1127, the trial court's action was proper because *Bigelow* authorizes a trial court in situations like this to "inform[] the jury that the acquittal was not consistent with findings of special circumstances and ask[] it to clarify its verdict to show its true intent." (*Id.* at p. 1136.) In the next sentence, however, *Bigelow* disapproved of what the trial court there actually did: "the court sent the jury back to deliberate." (*Ibid.*) That impermissible procedure occurred here too. We must reverse the true findings on the enhancement allegations and remand the case for further proceedings.

## DISPOSITION

The judgment of conviction is affirmed. The true findings on the prior conviction allegations under Penal Code section 667.61 are reversed and the sentence is vacated. The case is remanded for a new sentencing hearing, in which the trial court is directed to resentence defendant in accordance with the views set forth herein.

Bamattre-Manoukian, Acting P. J., and Mihara, J., concurred.