Filed 10/8/13  P. v. Falcon CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JORGE FALCON,<br><br>    Defendant and Appellant. | 2d Crim. No. B237163<br>(Super. Ct. No. BA375870-01)<br>(Los Angeles County) |

Jorge Falcon appeals from the judgment following his conviction by jury of willful, deliberate, and premeditated attempted murder (Pen. Code, §§ 187/664, subd. (a)),[1] with findings that the crime was for the benefit of a criminal street gang, and that appellant used a firearm.  (§§ 186.22, subd. (b)(1)(C); 12022.53, subds. (b), (c) & (e)(1).)[2]  The trial court sentenced him to state prison for 30 years to life, including a consecutive 10-year gang enhancement.  (§ 186.22, subd. (b)(1)(C).)

Appellant contends:  (1) the gang benefit and personal firearm use findings are not supported by substantial evidence; (2) the trial court violated his constitutional rights by allowing the prosecutor to ask the gang expert hypothetical questions which

_____

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] Appellant's codefendants, Luis Secaida and Jaime Garcia are not parties to this appeal. A separate jury decided their case, in simultaneous proceedings before the same court.

included appellant's name, and counsel's failure to object to such questions deprived him of the effective assistance of counsel; (3) the court abused its discretion by denying appellant's request to disclose confidential juror information; and (4) the court erred by imposing a 10-year gang enhancement for premeditated attempted murder. Respondent correctly agrees with the last contention. We will strike the gang enhancement and remand the matter to the trial court with directions. In all other respects, we affirm the judgment.

*Factual and Procedural Background*

On August 28, 2009, the victim, Jorge Ramirez, stood near a tattoo shop in the 4400 block of South Avalon Boulevard, in Playboys gang territory. It was daylight, and a few other people were there, including Ramon Guerra, and "Cricket," a Playboys gang member. A gold sports utility vehicle (SUV), possibly a Jeep, slowly passed by, twice, with three men inside. On its second pass, the SUV occupants threw gang signs, and called out "41." They also shouted derogatory terms for the Playboys gang, like "Peanut Butters," or "fuck putas." The SUV occupants were later identified as appellant, Luis Secaida and Jaime Garcia, who are 41st Street gang members with visible gang tattoos.

Garcia parked the SUV. Appellant and Secaida got out and walked slowly toward the tattoo shop. Appellant, who wore a black "hoodie," pulled a gun from his waistband, and Ramirez ran away. Appellant shot at him. Secaida pulled out a gun, pointed toward Ramirez, and fired.

Los Angeles Police Department (LAPD) Officer Jose Vaca and his partner arrived at the crime scene shortly after the shooting. They recovered six .32 caliber shell casings, approximately 20 feet from the tattoo shop. Three months later, appellant was detained and searched on an unrelated matter. The search yielded a gun, which subsequent testing showed had fired the casings found at the crime scene.

Officers interviewed Ramirez and Guerra on multiple occasions after the shooting. After several months, Guerra identified appellant as the shooter. Ramirez

2

identified appellant and Secaida and said they both shot at him from "point range" while he was with Playboys members.

Appellant told investigating officers that he was with Secaida (Grinch) and Garcia (Chaos) before the shooting. He denied that he fired a gun at the Playboys, and said Secaida had the gun, which he gave to appellant after the shooting.

Ramirez and Guerra did not identify anyone at trial. They testified they had been unable to identify anyone before trial. Ramirez testified he did not place his initials on the photo lineup displays that bear his initials. Guerra testified that officers forced him to select photos from the lineups, and he could not recall what he told them.

Prosecution gang expert Officer Nathan Brown testified that he received in-field training with experienced gang officers, two years of crime suppression experience in LAPD's Metropolitan Division, and that he had regular contact with multiple Black and Hispanic gangs in that Division. He then worked in the Newton Division gang unit for two years, where he received additional training and experience in gang crime investigation and gang suppression activities. His primary gang unit assignment included the 83-member 41st Street gang and its much larger rival, the Playboys gang. They have a multi-year feud over territory located near the shooting scene. Brown subsequently became a patrol officer in the Newton Division, and regularly encountered the 41st Street and Playboys gangs and continued to monitor their activities. He has testified as a gang expert and he shares his expertise with other officers investigating gang-related crimes.

DISCUSSION

I. *Sufficiency of the Evidence*

Appellant argues that there is not sufficient evidence to support the gang benefit and personal weapon use findings. We disagree.

"In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence− that is, evidence that is reasonable, credible, and of solid value− from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in

3

support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

## A. *Gang Benefit Enhancement*

We reject appellant's claim that the gang enhancement is not supported by substantial evidence. The gang enhancement statute imposes additional consequences when crimes are committed for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1).) An essential element of a criminal street gang is that one of its "primary activities" is the commission of specified criminal offenses. (*Id*., subd. (f).) "The phrase 'primary activities,' as used in the gang statute, implies that the commission of one or more of the statutorily enumerated crimes is one of the group's 'chief' or 'principal' occupations." (*People v. Sengpadychith (*2001) 26 Cal.4th 316, 323.) Assault with deadly weapons or force likely to produce great bodily injury, robbery, murder, attempted murder, gun possession and auto theft are among the crimes enumerated in the gang statute. (§ 186.22, subd. (e)(1)-(3), (23) & (25); see *People v. Vy* (2004) 122 Cal.App.4th 1209, 1226 [attempted commission of enumerated crimes also falls under gang statute].) To make the required showing, the prosecution may rely on evidence of the crimes charged against the defendant, evidence of crimes committed by other gang members, and expert testimony regarding the gang's activities. (*Sengpadychith,* at pp. 323-324.)

Prosecution gang expert Officer Brown testified that the primary activities of the 41st Street gang are "murder, robbery, vandalism, auto theft, weapons violations, and possession of automatic weapons." Brown testified regarding Jose Garcia, the self-admitted 41st Street member who was convicted in 2009 for second degree murder and assault with a firearm, predicate offenses that he committed in January 2007. Brown spoke with the officer who arrested Jose Garcia for the 2007 offenses.

4

Although Brown testified that the 41st Street gang committed crimes listed in the gang statute, appellant argues the prosecution failed to present adequate evidence of the 41st Street gang's primary activities. In so arguing, he relies in large part on *In re Alexander L.* (2007) 149 Cal.App.4th 605. *Alexander L.* does not help him. There, the gang expert testified that the subject gang "'committed quite a few assaults with a deadly weapon, several assaults,'" and had been "'involved in murders'" and "'auto thefts, auto/vehicle burglaries, felony graffiti, narcotic violations.'" (*Id*. at p.611.) The appellate court concluded the testimony was insufficient to establish the gang enhancement because (1) the expert admitted that the "vast majority" of cases connected to the gang were "graffiti related;" and (2) his testimony lacked an adequate foundation: "[i]t is impossible to tell whether his claimed knowledge of the gang's activities [was] based on highly reliable sources, such as court records of convictions, or entirely unreliable hearsay." (*Id*. at p. 612.)

In contrast, gang expert Brown acquired extensive personal knowledge of the 41st Street and Playboys gangs in the Newton Division gang unit, and as a patrol officer in that Division. In addition to having hundreds of personal contacts in those gangs, Brown reviewed field investigation records and reports pertaining to the gangs, and consulted other officers regarding the gangs' crimes. The certified records of convictions for the predicate crimes and Brown's testimony evidenced that the 41st Street gang's primary activities included crimes enumerated in the gang statute. (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1465 [testimony of a gang expert, founded on conversations with gang members, personal investigation of crimes committed by gang members, and information from colleagues in other law enforcement agencies, may be sufficient to prove a gang's primary activities].) *People v. Martinez* (2008) 158 Cal.App.4th 1324, 1330.)

B. *Firearm Use Enhancement*

Viewing the evidence as we must, in the "light most favorable to the judgment," we reject appellant's claim that there is not sufficient evidence to support the jury's finding that he personally used a firearm. (*People v. Albillar*, *supra*, 51 Cal.4th at

5

pp. 59-60.) Appellant admitted he was at the shooting scene. He was in possession of the gun months after the shooting. He nonetheless claims there was not sufficient evidence to support the finding that he personally used a firearm, and stresses that Ramirez and Guerra failed to identify him as the shooter at trial. However, the jury heard other evidence that they identified him as the shooter before trial. The evidence supports the jury's finding that the firearm use allegation is true. (*See People v. Cuevas* (1995) 12 Cal.4th 252, 257 [identification is sufficient to support a conviction, even if the witness is unable to positively identify the defendant at trial].) "Whether a defendant 'used a firearm in the commission of' [a crime] is for the trier of fact to decide." (*People v. Masbruch* (1996) 13 Cal.4th 1001, 1007.) We neither reweigh evidence nor reevaluate the credibility of witnesses. (*Albillar, supra,* at p. 60.)

## II. *Hypothetical Questions*

Appellant contends the trial court committed prejudicial error and violated his constitutional right to due process and a fair trial by allowing the prosecutor to pose hypothetical questions using his name, and the codefendants' names, which "allowed the expert to opine that appellant was the shooter." We disagree.

"As a general rule, a trial court has wide discretion to admit or exclude expert testimony." (*People v. Page* (1991) 2 Cal.App.4th 161, 187.) "We apply an abuse of discretion standard in reviewing a trial court's decision to admit the testimony of an expert." (*People v. Prince* (2007) 40 Cal.4th 1179, 1222.)

Evidence Code section 805 provides that "[t]estimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." (*People v. Prince, supra*, 40 Cal.4th at p. 1227; *People v. Valdez* (1997) 58 Cal.App.4th 494, 507 [a gang expert testified that the defendant was a member of a particular gang and that his activities were undertaken on behalf of the gang].) "Hypothetical questions must not be prohibited solely because they track the evidence too closely, or because the questioner did not disguise the fact the questions were based on the evidence." (*People v. Vang* (2011) 52 Cal.4th 1038, 1051.)

Appellant argues that the challenged hypothetical questions are prejudicial because "it was disputed [he] was the shooter" and the expert's opinion told the jury appellant "was the actual gang member who displayed the gun and fired." We disagree. Appellant bases his claim of prejudice on the false premise that the gang expert opined that he was the shooter. The expert's opinion did not even address the identity of the shooter. Rather, it addressed the purpose of a hypothetical crime. The expert opined the hypothetical crime was committed for the purpose of benefitting a criminal street gang. We thus reject appellant's claim that the court erred prejudicially by allowing the prosecutor to pose the hypothetical questions.[3]

### III. *Confidential Juror Information*

Appellant contends the trial court abused its discretion by denying his petition for disclosure of personal juror information. We disagree.

On October 6, 2011, the jury returned its verdict, including its finding that appellant personally used a firearm. Jurors Nos. 2 and 7 were visibly upset. The trial court polled the jury, and each juror expressed agreement with the verdict. A day after the verdicts were returned, juror No. 7 spoke ex parte with the trial court. A reporter recorded their meeting.[4]

On October 19, 2011, the sentencing date, counsel filed a petition seeking disclosure of juror information regarding jurors Nos. 2 and 7, because he believed other jurors may have coerced them. Counsel cited the emotional distress of both jurors in court, and described having later seen juror No. 7 "by the elevators in a daze," with another juror consoling her. During proceedings on October 19th, the trial court advised counsel of its meeting with juror No. 7, who had concerns about "whether or not

---

[3] Our resolution of this issue defeats appellant's related claim that he was denied the effective assistance of counsel because trial counsel failed to object to the improper hypothetical questions using his name. To establish such a claim, he would have to demonstrate prejudice, *i.e.*, a reasonable probability that the result of the proceeding would have been different if counsel had objected. (*Strickland v. Washington* (1984) 466 U. S. 668, 687-688.) Appellant has failed to demonstrate such prejudice.

[4] The propriety of that meeting is not in issue.

[appellant] personally discharged the firearm."  While discussing the matter, the court recalled having asked juror No. 7 whether there was any pressure to vote as she had, and said she responded with an "unequivocal, 'No.'"  The court noted that many jurors were emotionally affected by the decision, which made sense, given the extremely serious charges, appellant's young age, and other factors.  The court also observed that juror No. 7 did not seem to be "a likely candidate to be . . . pressured in an unlawful manner, with respect to the ultimate verdict that she represented on the record in fact was her own."  The court ordered the reporter to provide counsel a transcript of the meeting with juror No. 7, and invited counsel to submit further authority.

On November 3, 2011, the court denied the petition because there was not "a sufficient showing . . . of any juror misconduct that would necessitate or warrant disclosure of the [requested] contact information."

After a criminal jury verdict is recorded, all identifying juror information is sealed until further order of the trial court.  (Code Civ. Proc., § 237, subd. (a)(2).)  A defendant may "petition the court for access to personal juror identifying information within the court's records necessary for the defendant to communicate with jurors for the purpose of developing a motion for new trial or any other lawful purpose."  (Code Civ. Proc., § 206, subd. (g).)  "The petition shall be supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information.  The court shall set the matter for hearing if the petition and supporting declaration establish a prima facie showing of good cause for the release" of the requested information.  (Code Civ. Proc., § 237, subd. (b).)

Good cause for disclosure of juror information to support a motion for new trial based on juror misconduct is "a sufficient showing to support a reasonable belief that jury misconduct occurred."  (*People v. Rhodes* (1989) 212 Cal.App.3d 541, 552; *People v. Jefflo* (1998) 63 Cal.App.4th 1314, 1322.)  There is not good cause where allegations of jury misconduct are speculative, conclusory, or unsupported, or the alleged misconduct is not "likely to have influenced the verdict improperly."  (Evid. Code, § 1150, subd. (a);

8

see *Rhodes*, at p. 554.)  We review the denial of a petition for disclosure for an abuse of discretion.  (*People v. Jones* (1998) 17 Cal.4th 279, 317.)

Appellant argues the trial court abused its discretion by denying his petition for juror information because there was "undue pressure or coercion in the deliberations." He cites the emotional distress of jurors Nos. 2 and 7, and the reference by juror No. 7 to the juror (a lawyer) who was "helping" the jury.  The record supports the court's conclusion that other factors explain the jurors' emotional reactions.  The reference to the lawyer juror's assistance does not imply coercion.

Further, the record does not support appellant's claim that juror No. 7's comments prove she "had a reasonable doubt."  She did not state she had such doubt. She did say she was "struggling with is whether or not [appellant] was the shooter." "However, she then repeatedly said she thought she was having "more of an emotional reaction . . . [after] get[ting] a sense of who [the defendants] are as people."  She also told the court that counsel had given her his business card, and she thought she would contact him and "ask him further questions."

Appellant stresses that the record does not show the trial court asked juror No. 7 whether other jurors pressured her, despite the court's contrary statement.  It was not required to make that inquiry, absent evidence of juror misconduct.  (*People v. Guerra* (2009) 176 Cal.App.4th 933, 942.)  Appellant failed to show that any conduct by the jury was "of such a character as is likely to have influenced the verdict improperly." (Evid. Code, § 1150, subd. (a).)  "[J]urors can be expected to disagree, . . . and to attempt to persuade disagreeing fellow jurors by strenuous and sometimes heated means." (*People v. Johnson* (1992) 3 Cal.4th 1183, 1255.)  A verdict may not be impeached by inquiry into the jurors' mental processes.  (*People v. Steele* (2002) 27 Cal.4th 1230, 1261.)  The court did not abuse its discretion by denying the petition.

IV.  *10-Year Consecutive Gang Enhancement*

Appellant argues, and respondent agrees, that because appellant was sentenced to an indeterminate term for the premeditated attempted murder, the trial court should not have sentenced him to a consecutive 10-year term for the gang enhancement

9

for that crime.  We also agree.  (*People v. Lopez* (2005) 34 Cal.4th 1002, 1004-1007; *id.* at p. 1004 [when a defendant is convicted of a felony that carries a life sentence and the crime is gang-related, section 186.22, subdivision (b)(5) "applies and imposes a minimum term of 15 years before the defendant may be considered for parole"].)  We will strike the consecutive 10-year gang enhancement and remand the matter to the trial court with directions.

DISPOSITION

We strike the section 186.22, subdivision (b)(1)(C), consecutive 10-year gang enhancement imposed for the premeditated attempted murder, and direct the trial court to impose the 15-year minimum parole eligibility requirement set forth in section 186.22,  subdivision (b)(5).  The clerk of the superior court is directed to amend the abstract of judgment accordingly, and to forward a certified copy of the amended abstract to the Department of Corrections.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:



GILBERT, P.J.



YEGAN, J.

10

Craig J. Mitchell, Judge

Superior Court County of Los Angeles

_____


Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Blythe H. Leszkay, Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.