Filed 3/15/21  P. v. Garrison CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DANNY RAY GARRISON,<br><br>    Defendant and Appellant. | D077149<br><br><br>(Super. Ct. No. SCN388393) |

APPEAL from a judgment of the Superior Court of San Diego County, Blaine K. Bowman, Judge.  Reversed in part, modified in part, and remanded for resentencing.

Alissa Bjerkhoel, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Danny Ray Garrison was charged with two counts of forcibly committing lewd acts on his niece (Pen. Code, § 288, subd. (b)),[1] five counts of nonforcibly committing lewd acts on his niece's friend (§ 288, subd. (a)), one count of having unlawful sexual intercourse with his minor daughter (§ 261.5, subd. (c)), and three counts of possessing child pornography (§ 311.11).[2] All the counts involving Niece and Friend (but not Daughter) included multiple-victim allegations under the One Strike law (§ 667.61), which potentially subjected Garrison to 15-year-to-life sentences on each of those counts. The jury found Garrison guilty on all counts, and initially found the multiple-victim allegations true as to some counts, but not true as to others. The trial court informed the jury that its findings were inconsistent, that they should be "either true for all or not true for all," and directed the jury to deliberate further. After deliberating for a few more minutes, the jury returned true findings on all of the multiple-victim allegations. The trial court sentenced Garrison to 60 years to life, plus 25 years four months.

Garrison raises two issues on appeal. First, he contends that by directing the jury to reconsider its initial not true findings on certain of the multiple-victim allegations, the trial court violated section 1161, which states that "the Court cannot require the jury to reconsider" "a verdict of acquittal," even if "it appears to the Court that the jury have mistaken the law." Second, Garrison contends his conviction in count 7 for forcibly committing a lewd act on Niece (§ 288, subd. (b)) must be reduced to the lesser included offense of

---

[1]    Further unspecified statutory references are to the Penal Code.

[2]    To protect their privacy and for readability, we refer to Garrison's niece as "Niece"; to Niece's friend as "Friend"; and to Garrison's daughter as "Daughter."

2

nonforcibly committing a lewd act (§ 288, subd. (a)) because insufficient evidence supports the forcible element of his conviction.

For reasons we will explain, we conclude both of Garrison's contentions have merit. Accordingly, we (1) reverse the true findings on the multiple-victim allegations for which the jury initially returned not true findings (counts 2, 3, 4, and 5); (2) reduce the conviction on count 7 to nonforcibly committing a lewd act on a child under 14 (§ 288, subd. (a)); and (3) remand for resentencing. In all other respects, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Garrison's conduct toward Niece and Friend occurred in the late 1980's to mid-1990's, and came to light in 2017 when Friend contacted the police after Garrison contacted her through social media. During the course of the ensuing investigation, police found recent videos on Garrison's cellphone depicting him having sex with 16-year-old Daughter, which resulted in his remaining charges.

## Prosecution Case

### *Counts Involving Niece (Counts 6 and 7)*

Garrison is Niece's paternal uncle, and is about 12 years older than her.

In the mid to late 1980's, when Niece was about four or five, she lived with her parents in Lemon Grove. Garrison lived next door with his mother (Niece's paternal grandmother). Niece and Garrison did activities together, and she looked up to him "[k]ind of like a big brother."

One day when Niece's mother was taking a nap, Garrison told Niece "to run and hide." Niece was scared and did not want to. Garrison threatened that if Niece did not comply, "he was going to end up doing things to [her] mom" instead. Niece "didn't want him to" do that, so she ran and hid under a

3

bed. Garrison "yanked" her out from under the bed by her waistband, pulled down her pants and underwear, and rubbed her vagina with his fingers.

On more than 10 occasions while Niece lived in Lemon Grove, Garrison rubbed her vagina over and under her clothing. Niece was scared when Garrison did this.

When Niece was around six or seven, she and her parents moved to Escondido, where they eventually moved into a house on Begonia Street when Niece was about eight. Garrison moved in with them for a while. There, he rubbed Niece's vagina on at least five occasions. Niece was afraid of Garrison when she was alone with him.

When Niece was 11, she moved with her parents to Valley Center. She often slept over on weekends with her paternal grandmother, who had moved to Escondido. Garrison no longer lived with his mother, but would sometimes stay over when Niece was there. Niece would sleep in shorts on a couch in the living room. On several occasions when she was sleeping, Niece "would wake up to [Garrison] touching [her] vagina" by reaching up the leg of her shorts. Niece "would kind of roll over to reposition" herself so Garrison would stop.

The final time Garrison touched Niece in this manner was when she was 15. The morning after it occurred, Niece called and told her mother, who picked her up. Niece also told her grandmother, who called Niece "a liar." After this incident, Niece never saw Garrison again, and her relationship with her grandmother ended.

The only threat Niece remembered Garrison ever making was on the first occasion when he said he would do things to her mother if Niece did not comply. Niece thought of this threat on some other occasions when Garrison was touching her, but not every time. Niece "was afraid of him when he was

doing those things to [her]" because he "was an adult" and was bigger and stronger than her.

Based on this conduct, Garrison was charged with two counts of forcibly committing a lewd act on a child under 14 (§ 288, subd. (b)), each with a multiple-victim allegation (§ 667.61).

*Counts Involving Friend (Counts 1 through 5)*

Friend is about 15 years younger than Garrison.

When Friend was eight, she moved near Niece on Begonia Street in Escondido. Friend spent a lot of time at Niece's house, and Garrison was often there.

When Friend was almost nine, Garrison touched her genitals underneath her underwear with his bare hand.

When Friend was nine or 10, Garrison began touching his penis to her face and the outside of her vagina. He progressed to inserting " 'just the tip' " of his penis into her vagina, and then to full-blown intercourse. Garrison had intercourse with Friend between 10 and 30 times while she was in elementary school.

When Friend was 10 or 11, Garrison inserted his penis into her anus on more than one occasion.

Friend was 13 when Garrison sexually abused her for the last time.

Friend reported Garrison to the police in 2017 after he contacted her through social media and eventually sent her a threatening pornographic video. During the ensuing police investigation, Friend participated in a controlled phone call and in-person meeting with Garrison, during which he apologized for "everything [he] did in the past." Police arrested Garrison at the end of the in-person meeting.

Based on his conduct toward Friend, Garrison was charged with five counts of committing a lewd act on a child under 14 (§ 288, subd. (a)), each with a multiple-victim allegation (§ 667.61).

*Counts Involving Daughter (Counts 9 through 11)*[3]

After the police arrested Garrison at his meeting with Friend, he consented to a search of his cellphone. Police eventually discovered on his phone three videos of him having sex with 16-year-old Daughter.

Garrison was charged with one count of unlawful sexual intercourse with a minor (§ 261.5; count 8), and three counts of possessing child pornography (§ 311.11; counts 9 through 11).

*Garrison's Admissions*

In an interview with police the day of his arrest, Garrison admitted he had sexually abused Niece and Friend.

Later, during a nonconfidential consultation with a jailhouse nurse, Garrison spontaneously admitted he had had sex with Daughter.

**Defense Case**

The defense called no witnesses, and primarily challenged the accuracy of Friend's and Niece's recollections of the alleged decades-old events.

**Verdicts and Sentencing**

The jury found Garrison guilty on all counts, and eventually returned true findings on all special allegations.

The trial court sentenced Garrison to 60 years to life, plus 25 years four months, consisting of the following:

| | |
|---|---|
| Count 1 (lewd act on Friend): | 15 years to life |
| Count 2 (lewd act on Friend): | 8 years |

---

[3]     Garrison's convictions on these counts are not at issue in this appeal.

| | |
|---|---|
| Count 3 (lewd act on Friend): | 15 years to life |
| Count 4 (lewd act on Friend): | 15 years to life |
| Count 5 (lewd act on Friend): | 15 years to life |
| Count 6 (forcible lewd act on Niece): | 8 years |
| Count 7 (forcible lewd act on Niece): | 8 years |
| Count 8 (unlawful sex with Daughter): | 8 months |
| Count 9 (child pornography): | 8 months |
| Count 10 (child pornography): | 3 years (concurrent) |
| Count 11 (child pornography): | 3 years (concurrent) |

## DISCUSSION

### I. Trial Court Erred by Directing the Jury to Reconsider its Not True Findings

The jury found Garrison guilty on all counts, and initially found the multiple-victim allegations true as to some counts but not true as to others. Garrison contends that by directing the jury to reconsider these inconsistent true/not true findings—after which the jury returned all true findings—the trial court violated section 1161, which authorizes courts to direct juries to reconsider seemingly erroneous verdicts of *conviction*, but prohibits reconsideration of verdicts of *acquittal*. We agree.

### A. Background

Each count as to Niece and Friend included a multiple-victim allegation under the One Strike law, which potentially subjected Garrison to a sentence of 15 years to life, per count. (§ 667.61, subds. (b), (c), (e)(4).)[4]

---

[4] Subject to exceptions not applicable here, section 667.61, subdivision (b) specifies that "any person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for 15 years to life." Forcibly (as to Niece) and nonforcibly (as to Friend) committing a lewd act on

7

After deliberating for several hours, the jury reported it had reached verdicts on all counts. The trial court reviewed the verdict forms, which showed the jury had found: (1) Garrison guilty on all counts; (2) the multiple-victim allegations true as to counts 1 (lewd act on Friend), 6 (forcible lewd act on Niece), and 7 (forcible lewd act on Niece); and (3) the multiple-victim allegations not true as to counts 2 through 5 (lewd act on Friend).

Without divulging the contents of the verdict forms, the trial court stated in open court, "All right. I hesitate because it appears as though the jury has reached inconsistent verdicts with respect to . . . the multiple victim allegation. So it's either true for all or not true for all, and there are inconsistent verdicts." The court sent the jury to the jury room and conferred with counsel.

Defense counsel urged the court to "record the verdicts as they are," arguing the court essentially directed a verdict by advising "the jury that they were inconsistent" and "by saying that it's either all or none." The court responded that if the jury meant for the findings "to be not true for all then I think your client should get the benefit of that . . . ." The prosecutor deferred to the court, but added that there were "audible gasps when the Court said there [were] inconsistent verdicts." The court clarified that it appeared "the jurors . . . were all nodding their heads and looking back at the foreperson . . . as if they had discussed this fact in the jury room." The court stated it would take a brief recess to research how to handle the situation.

a child under 14 are offenses specified in subdivision (c) of section 667.61. (§ 667.61, subd. (c)(4), (8).) Being "convicted in the present case . . . of committing [a qualifying offense] against more than one victim" is a circumstance specified in subdivision (e) of section 667.761. (§ 667.61, subd. (e)(4).)

After the recess, the court informed counsel it had read *People v. Carbajal* (2013) 56 Cal.4th 521 (*Carbajal*), but found it "was a much different" case because it "involved a multiple victim allegation . . . where the jury hung on one of the victims and convicted on the other." The court then announced its findings that the "verdicts are unintelligible" and "inconsistent, because either they are all not true or they are all true." The court added, "If they made an error and intended to find them not true I have a duty to investigate that and see if your client is going to avoid a life term."

The court advised counsel it would seal the verdicts on the unaffected counts (counts 8 through 11), modify the jury instruction regarding the multiple-victim allegation to clarify that it relates to multiple victims "in the present case," and send the jury back to deliberate with new verdict forms for the affected counts (counts 1 through 7). Defense counsel again requested that the court accept the verdicts as-is, reiterating his view that "the Court may have inadvertently influenced the jury by . . . saying it's either all or none." The court denied the request, reasoning the findings were "unquestionably . . . unintelligible . . . and inconsistent."

The court brought the jury back into the courtroom and explained that because "the Court feels that . . . the verdicts are inconsistent when it comes to the allegation," the court would read a slightly modified jury instruction and send the jury "back in the jury room [to] continue your deliberations."

After deliberating for about 12 minutes, the jury returned true findings on all the multiple-victim allegations.

At the sentencing hearing, defense counsel again requested that the court record the jury's initial not true findings. The court denied the request, explaining it had allowed the jury to reconsider its findings because the court was "concern[ed]" that the jury "intended to find the allegation not to be

9

true," and the court did not want Garrison "facing a life term if there was some misunderstanding of the law that [he] should have the benefit of."

As noted, the trial court sentenced Garrison to 60 years to life, plus 25 years four months. This sentence included one-strike sentences of 15 years to life on three of the four counts for which the jury initially returned not true findings on the attached multiple-victim allegations (counts 3, 4, and 5).[5]

## B.  Legal Principles

In *Carbajal*, *supra*, 56 Cal.4th 521, the Supreme Court clarified the scope of a trial court's authority to address conflicting jury verdicts or findings. The court explained that "[t]he Legislature has set forth in prescriptive detail the procedures that trial courts must follow in receiving a jury verdict," which "are intended to reduce the likelihood of a trial court unduly, even if inadvertently, influencing the jury to reach a particular outcome. [Citations.] The mechanical, prescriptive character of the process for eliciting and receiving a jury verdict reflects the Legislature's judgment that the risk of jury coercion outweighs the risk of jury error." (*Id.* at pp. 530-531 [discussing §§ 1147, 1149, 1161, 1163, 1164].)

Section 1161, which governs the aspect of the verdict procedure at issue here, states in part: "*When there is a verdict of conviction*, in which it appears to the Court that the jury have mistaken the law, the Court may explain the reason for that opinion and direct the jury to reconsider their verdict, and if, after the reconsideration, they return the same verdict, it must be entered; but *when there is a verdict of acquittal, the Court cannot require the jury to reconsider it*." (Italics added.) The courts have treated not

---

5       It appears the court did not impose a one-strike sentence on count 2 because it was unclear from Friend's testimony whether that offense occurred on a separate occasion.

true findings as verdicts of acquittal. (See *Carbajal*, *supra*, 56 Cal.4th at p. 529; *People v. Avila* (2006) 38 Cal.4th 491, 600 (*Avila*); *People v. Guerra* (2009) 176 Cal.App.4th 933, 941, fn. 2 (*Guerra*).)

The *Carbajal* court explained that although section 1161 bars reconsideration of verdicts of acquittal, this bar does not apply to verdicts that are " '*ambiguous*'" or "*unintelligible*." (*Carbajal*, *supra*, 56 Cal.4th at p. 532, italics added.) These types of verdicts occur, for example, "if a jury returns a verdict finding the defendant guilty and not guilty on the same count," or "where a jury finds the defendant guilty of a greater offense but not guilty of a lesser included offense." (*Ibid*.) "In these cases, asking the jury to clarify its verdict [does] not contravene the procedural requirements of the statutory scheme because it [is] not possible to understand whether the jury [has] actually convicted or acquitted the defendant of the specified counts. Clarification [is] necessary to determine whether there [is] an intelligible verdict at all." (*Ibid*.)

By contrast, the *Carbajal* court clarified that "[m]ere *inconsistency* does not provide a valid reason for courts to reject a jury verdict." (*Carbajal*, *supra*, 56 Cal.4th at p. 532, italics added; *Avila*, *supra*, 38 Cal.4th at p. 600 ["As a general rule, inherently inconsistent verdicts are allowed to stand."].) As the Supreme Court explained in an earlier case: " '[I]f an acquittal of one count is factually irreconcilable with a conviction on another, *or if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense*, effect is given to both.' [Citation.] Although ' "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred' in such situations, 'it is unclear whose ox has been gored.' [Citation.] It is possible that the jury arrived at an inconsistent conclusion through 'mistake, compromise, or lenity.' " (*Avila*, at p. 600, italics

11

added; see *Carbajal*, at p. 532.) " '[A]n individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake . . . .' " (*Carbajal*, at p. 532; see *Guerra*, *supra*, 176 Cal.App.4th at p. 942 [" 'If what went on in the jury room were judicially reviewable for reasonableness or fairness, trials would no longer truly be by jury, as the Constitution commands.' "].)

"Thus, apart from the limited circumstance specified in section 1161— where 'it appears to the Court that the jury have mistaken the law' in initially rendering 'a verdict of conviction'—a trial court may not decline to accept a jury verdict, or refuse to hear the verdict, simply because it is inconsistent with another verdict rendered by the same jury in the same case." (*Carbajal*, *supra*, 56 Cal.4th at pp. 532-533.) Rather, "when a trial court is confronted with a verdict that it believes to be at odds with the jury's true intent, the court may, at the request of any party, poll the jury . . . . In so doing, the trial court may not express its own opinion of the verdict or otherwise invite the jury to reconsider its verdict unless permitted by section 1161." (*Carbajal*, at pp. 536-537.)

## C. Analysis

Applying section 1161 as construed in *Carbajal*, *supra*, 56 Cal.4th 521, we conclude the trial court erred by directing the jury to reconsider its not true findings on the multiple-victim allegations attached to counts 2 through 5. Although these findings were seemingly *inconsistent* with the jury's true findings on the multiple-victim allegations attached to counts 1, 6, and 7 (as well as the jury's guilty verdicts on all counts involving Niece and Friend), the findings were not *unintelligible*—as the trial court believed—because none of the inconsistencies pertained to the same count. (See *Carbajal*, at

12

p. 532.) Thus, while the trial court could have polled the jurors to determine whether the verdict forms accurately reflected their findings, the court could not, as it did here, "express its own opinion of the verdict" and "invite the jury to reconsider its verdict." (*Id.* at pp. 536-537.)

Our conclusion is supported by the closely analogous case of *Guerra*, *supra*, 176 Cal.App.4th 933, on which Garrison heavily relies. The *Guerra* jury found the defendant guilty of molesting his daughter and another girl, but initially returned not true findings on the multiple-victim allegations associated with these victims. (*Id.* at p. 936.) The trial court directed the jury to reconsider its "inconsistent" findings and suggested that, based on the guilty verdicts pertaining to more than one victim, "the answer to those allegation questions should be true." (*Id.* at p. 939.) After briefly deliberating further, the jury returned true findings on all the allegations. (*Id.* at 940.)

The Court of Appeal reversed, finding the trial court exceeded its authority under section 1161 by "invit[ing] the jury to 'reconsider' its not true findings and allow[ing] the jurors to deliberate anew." (*Guerra*, *supra*, 176 Cal.App.4th at p. 944.) The court found that instead, to protect the defendant's rights under section 1161, the trial court was limited to polling the jurors. "If each answered that the verdicts and findings reflected the juror's individual verdicts and findings, then the court's task was complete under section 1161—the jury had rendered inconsistent verdicts and the court was required to accept and record all of them, thereby satisfying the rule that ' "if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense, effect is given to both." [Citation.]' " (*Guerra*, at p. 944, quoting *Avila*, *supra*, 38 Cal.4th at p. 600.)

13

Similarly here, the trial court could have polled the jurors to determine whether "the verdicts and findings reflected [each] juror's individual verdicts and findings." (*Guerra, supra*, 176 Cal.App.4th at p. 944.) But the court could not, consistent with its authority under section 1161, direct the jury to reconsider its not true findings, which were tantamount to verdicts of acquittal. (*Guerra,* at p. 944; see *People v. Espiritu* (2011) 199 Cal.App.4th 718, 721-722, 726-727 [holding the trial court erred by directing the jury to reconsider its not true finding on a weapon-use enhancement allegation that was seemingly inconsistent with the jury's guilty verdicts and true finding on a great bodily injury allegation].)

The Attorney General correctly observes that the *Guerra* trial court expressed a stronger opinion about what the jury's reconsidered findings should be ("the answer to those allegation questions should be true" (*Guerra, supra*, 176 Cal.App.4th at p. 939)) than did the trial court here ("it's either true for all or not true for all"). But regardless of its comments to the jury, the trial court ran afoul of section 1161 by directing the jury to reconsider its not true findings. The fact that the court *also* "express[ed] its own opinion of the verdict" merely compounded the error. (*Carbajal, supra*, 56 Cal.4th at p. 536.)

To support its contention that the trial court complied with section 1161, the Attorney General cites *Bigelow v. Superior Court* (1989) 208 Cal.App.3d 1127, in which the appellate court posited that the trial court could have attempted to resolve inconsistent jury verdicts by "inform[ing] the jury that [its] acquittal [on a murder charge] was not consistent with findings of special circumstances and *asked it to clarify its verdict to show its true intent*." (*Id.* at p. 1136, italics added.) But as the *Guerra* court observed, the cited passage in *Bigelow* is unpersuasive because "[i]n the next sentence, . . .

14

*Bigelow* disapproved of what the trial court there actually did: 'the court sent the jury back to deliberate.' " (*Guerra*, *supra*, 176 Cal.App.4th at p. 944.) Moreover, the quoted passage from *Bigelow* appears irreconcilable with the Supreme Court's more recent clarification in *Carbajal* that the trial court may neither "express its own opinion of the verdict," nor "invite the jury to reconsider its verdict." (*Carbajal*, *supra*, 56 Cal.4th at pp. 536-537.)

With Garrison potentially facing multiple life sentences, the trial court understandably was concerned with ensuring that the jury's inconsistent findings reflected its true intent. But because the jury's verdicts and findings were merely *inconsistent* and not *unintelligible*, section 1161 barred the court from directing the jury to reconsider its not true findings. At most, the court could have polled the jurors to confirm that the verdict forms accurately reflected each juror's findings. (See *Carbajal*, *supra*, 56 Cal.4th at pp. 532-533, 536-537.)

Accordingly, we reverse the true findings on the multiple-victim allegations that the jury initially found not true (counts 2 through 5).

## II. Insufficient Evidence Supports Forcible Lewd Act Conviction

Garrison contends his conviction in count 7 for forcibly committing a lewd act on Niece (§ 288, subd. (b)) should be reduced to the lesser included offense of nonforcibly committing a lewd act (§ 288, subd. (a)) because insufficient evidence supports the forcible element of his conviction. We agree.

### A.  Background

According to the charging document, count 7 was based on the "last time" Garrison touched Niece's vagina, sometime between September 1994

15

and September 1997.[6]  Based on Niece's testimony, this date range covers the period when she was 11 through 13 years old and lived in Valley Center.  The only conduct Niece described as occurring during this period was Garrison touching her vagina by reaching "up the leg of [her] shorts" while she was sleeping on her grandmother's couch.  When this woke Niece, she "roll[ed] over to reposition" so Garrison would stop.

## B.  Legal Principles

Section 288, subdivision (b) makes it a felony for any person to willfully and lewdly commit a lewd or lascivious act upon or with the body of a child under the age of 14 "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person."

" 'Force, in this context, means physical force that is " 'substantially different from or substantially greater than that necessary to accomplish the lewd act itself.' " ' [Citation.]" (*People v. Jimenez* (2019) 35 Cal.App.5th 373, 391 (*Jimenez*); accord *People v. Soto* (2011) 51 Cal.4th 229, 242.)

" 'Duress,' " in this context, means " ' "a direct or implied *threat* of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." ' [Citations.]" (*People v. Veale* (2008) 160 Cal.App.4th 40, 46 (*Veale*); see *People v. Leal* (2004) 33 Cal.4th 999, 1004.)  The existence of duress is determined by objectively evaluating the totality of the circumstances, including:  the victim's and perpetrator's

---

6      Because this count was based on events that occurred when Niece "was under the age of 14" (§ 288, subd. (b)), our analysis does not take into account her testimony regarding the *truly* "last time" Garrison abused her when she was 15.

16

relative ages and sizes; their relationship, including the perpetrator's position of dominance or authority; the perpetrator's past and present conduct toward the victim; threats to harm the victim, or that revealing the molestation will jeopardize the family; and physically controlling the victim when he or she attempts to resist. (See *Veale*, at p. 46; *People v. Thomas* (2017) 15 Cal.App.5th 1063, 1072; *People v. Senior* (1992) 3 Cal.App.4th 765, 775.)

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Powell* (2018) 5 Cal.5th 921, 944.) In doing so, we " 'presume[ ] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*Ibid.*)

## C. Analysis

Having reviewed the appellate record under the applicable deferential review standard, we find no substantial evidence indicating Garrison used force or duress in committing the lewd act covered by count 7.

There is no substantial evidence of force because the only force Garrison used was reaching up the leg of Niece's shorts. This was not " ' " 'substantially different from or substantially greater than that necessary to accomplish the lewd act itself.' " ' [Citation.]" (*Jimenez, supra*, 35 Cal.App.5th at p. 391.) Garrison did not remove or reposition her clothing, nor did he restrain or otherwise touch Niece when she awoke and repositioned herself to end the touching. (See, e.g., *People v. Kusumoto* (1985) 169 Cal.App.3d 487, 494 (*Kusumoto*) [" 'force' in section 289(a) simply cannot be stretched to encompass the type of conduct involved in this case, where the

17

victim was penetrated while asleep and where the victim's will was not overcome by any physical force substantially different from or greater than that necessary to accomplish the act itself"].)[7]

Likewise, there is no substantial evidence that Garrison used duress in committing this offense because Niece was asleep and, thus, Garrison made no requisite " ' "direct or implied threat." ' " (*Veale*, *supra*, 160 Cal.App.4th at p. 46)  To be sure, there were many relevant circumstances Garrison could have exploited to exert duress over Niece—he had previously threatened to harm her mother; he used force against Niece the first time he molested her; he was older, bigger, and stronger; and he was her uncle, and she looked up to him like a brother.  But because Niece was asleep when Garrison committed the act covered by count 7, Garrison never undertook a predicate act that would result in duress.

Because substantial evidence does not support Garrison's conviction for forcibly committing a lewd act as alleged in count 7, his "conviction must be reduced to reflect a conviction of the lesser included offense of violating . . . section 288, subdivision (a)."  (*People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1321-1322; see §§ 1181(6), 1260; *People v. Navarro* (2007) 40 Cal.4th 668, 671 ["an appellate court that finds that insufficient evidence supports the conviction for a greater offense may, in lieu of granting a new trial, modify

---

[7]     Although the California Supreme Court later held that the substantially different from or substantially greater standard of force did not apply to the statute at issue in *Kusumoto* (see *People v. Griffin* (2004) 33 Cal.4th 1015, 1028; *People v. McCann* (2019) 41 Cal.App.5th 149, 157*)*, we are nonetheless persuaded by the *Kusumoto* court's underlying logic that the standard was not satisfied where the victim was asleep and the perpetrator used no more force than was necessary to accomplish the unlawful act.

the judgment of conviction to reflect a conviction for a lesser included offense"].)

## DISPOSITION

The true findings on counts 2, 3, 4, and 5 are reversed. The conviction on count 7 is modified to reflect a conviction of violating section 288, subdivision (a). The matter is remanded to the trial court for resentencing.

HALLER, Acting P. J.

WE CONCUR:

O'ROURKE, J.

AARON, J.

19