Filed 8/23/16  P. v. Moreno CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JESSE MORENO, JR. et al.,<br><br>    Defendants and Appellants. | F068751<br><br>(Super. Ct. No. F13901444)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan B. Conklin, Judge.

Jennifer A. Mannix, under appointment by the Court of Appeal, for Defendant and Appellant Jesse Moreno, Jr.

Katharine Eileen Greenebaum, under appointment by the Court of Appeal, for Defendant and Appellant Daniel Andrade.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Robert Gezi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Defendants Jesse Moreno, Jr., and Daniel Andrade were apprehended by police following a high-speed pursuit. Moreno was charged with evading the police (Veh. Code, § 2800.2, subd. (a)); count 1); unlawful taking of a vehicle (*id.*, § 10851, subd. (a); count 2); and active participation in a criminal street gang (Pen. Code, § 186.22, subd. (a); count 3).[1] A gang enhancement (§ 186.22, subd. (b)(1)) was attached to counts 1 and 2. He was convicted of evading police and the substantive gang charge, and the gang enhancement in count 1 was found true. The jury deadlocked on the unlawful taking of a vehicle charge. In a bench trial, the court found true the allegations Moreno had suffered two prior strike convictions (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and had served three prior prison terms (§ 667.5, subd. (b)). Moreno was sentenced to an aggregate term of 13 years in prison.

Andrade was charged with receipt of stolen property (§ 496d, subd. (a); count 4) and active participation in a criminal street gang (§ 186.22, subd. (a); count 5). The jury found Andrade not guilty of receipt of stolen property, but guilty of active participation in a criminal street gang. In a separate bench trial, the court found Andrade had served a prior prison term (§ 667.5, subd. (b)). Andrade was sentenced to an aggregate term of five years in prison.

On appeal, Moreno contends (1) the gang expert's testimony relied on evidence constituting testimonial hearsay and, therefore, violated his Sixth Amendment right to confront and cross-examine witnesses; and (2) the trial court erred in admitting evidence related to an unsolved shooting of a Sureño gang member. Andrade joins Moreno in these claims, and further contends (3) the trial court erred in admitting evidence related to a prior uncharged evasion incident; (4) the trial court erred when it did not dismiss his substantive gang charge (§ 186.22, subd. (a)), because he was acquitted of the only other

---

[1]All undefined statutory citations are to the Penal Code unless otherwise indicated.

felony with which he was charged; and (5) the trial court did not correctly calculate his presence credits.

With respect to the fifth claim, the parties agree the issue has subsequently been resolved, so the argument is dismissed as moot. We reject all other claims and affirm.

## FACTS AND PROCEDURAL HISTORY

On August 26, 2013, the court bifurcated the gang allegations and enhancements (phase II) from the remaining counts (counts 1, 2, and 4) (phase I). Defendants were tried jointly, and both phases of the trial were tried by the same jury; defendants' prior convictions were tried in a bench trial.

### *Phase I of the Trial*

Sometime between 8:00 a.m. and 9:00 a.m. on February 9, 2013, Martha Mendoza reported her 1997 black Honda Accord missing. At about 10:30 a.m. that same day, Sanger police tracked the vehicle's LoJack device, and after locating the Honda, attempted to initiate a traffic stop. The driver of the Honda failed to yield to police emergency lights and accelerated to a high rate of speed. The Fresno County Sheriff's Department joined in the pursuit of the Honda. At one point, the Honda reached speeds of 95 miles per hour, weaved in and out of traffic, and ran several stop lights and a stop sign.

The Honda eventually turned into a vacant field and got stuck in mud. The driver, Moreno, fled the vehicle on foot but was subsequently apprehended. The right front passenger, Andrade, went head first out of the passenger's side of the vehicle and attempted to crawl away before he was apprehended. A female passenger in the back of the vehicle, Roxanne Gonzales, was also taken into custody. Before Moreno was apprehended, California Highway Patrol Officer Joel Heckman asked Andrade who the driver of the Honda was. Andrade stated "he did not know who [the driver] was."

After the pursuit, police searched the Honda and found eight shaved keys in the back seat. Police also observed the vehicle was running without a key in the ignition.

3.

Police advised Andrade pursuant to *Miranda* (*Miranda v. Arizona* (1966) 384 U.S. 436) and took him to the Fresno area highway patrol office. Police asked him where he had been when he was detained and he replied, "'You got me at my house. I have been there all morning.'" Andrade claimed, again, he did not know the driver of the Honda.

**Phase II of the Trial**

In phase II of the trial, the prosecutor tried the gang enhancement allegation against Moreno, and substantive gang charges against both defendants. In so doing, the prosecutor introduced evidence of two prior uncharged acts.

**The Santos Shooting**

Officer Joseph St. Angelo testified to the following events. At 7:50 a.m. on February 9, 2013, the same day Mendoza's Honda was reported stolen, police responded to a reported shooting in Orange Cove, a city in Fresno County. St. Angelo, one of the responding officers, recognized the victim, Brian Santos. Santos was a self-identified Sureño gang member.

When St. Angelo arrived at the scene, Santos did not have a shirt on and he had been shot on the left side of his stomach. St. Angelo observed a blue sweatshirt and T-shirt near Santos, consistent with clothing commonly worn by Sureños. The sweatshirt and T-shirt both had matching holes in them and were stained with what appeared to be blood.

Santos claimed he did not see the shooter's vehicle or the shooter. St. Angelo observed surveillance video from a market near where Santos was shot, as well as video from a business across the street. One of the videos depicted a vehicle pull up next to Santos with the driver's side of the car facing him. The rear driver's side window was down. It appeared to St. Angelo that someone inside the vehicle exchanged words with Santos, and as Santos turned and ran, he was struck by something. St. Angelo stated the black vehicle in the video appeared to be a four-door Honda with two rear tinted

4.

windows and silver trim under the windows. A "be on the lookout" was issued for a black Honda (as well as a white vehicle also appearing in the video).

Later that day, after defendants were detained following the pursuit, police processed Mendoza's Honda. St. Angelo located two, spent nine-millimeter shell casings on the right front passenger seat floorboard. In the back seat of the Honda, officers found a bulletproof vest and an empty gun holster. Bullet fragments collected from the scene of the shooting appeared to match casings recovered from the floorboard of the Honda.

According to St. Angelo, Orange Cove is considered to be Sureño territory, but the Bulldog street gang also has a significant presence in the area. The Bulldogs are the biggest rivals of the Sureños in Orange Cove, and given the level of violent incidents between the gangs, a gang injunction was incorporated over the city.

***The Prior Evasion Incident***

Officer Guillermo Garza, formerly with the Orange Cove Police Department, testified to the following events. On November 25, 2012, Garza initiated a stop of a white Oldsmobile Alero pursuant to a criminal investigation. When the driver of the Oldsmobile failed to yield to police emergency lights, a pursuit began. The vehicle reached speeds of up to 100 miles per hour and went through two stop signs without stopping.

During the pursuit, one of the passengers inside the Oldsmobile threw an unidentified object from the vehicle. The vehicle eventually skidded into a mailbox and a light pole and stopped. Three Hispanic males inside the Oldsmobile fled on foot. Minutes later, Orange Cove police apprehended Andrade along the path the three males had been seen fleeing toward.

A citizen in a nearby home told police a Hispanic male with a ponytail was in his backyard. James Nees, a Vario Orange Cove Rifa Bulldog gang member, lived at the residence. Police surrounded the residence and instructed anyone to come out with their hands up. Moreno, among other individuals, came out of the home. Moreno did not have

a ponytail at that time, but there was freshly cut hair on his shoulder.  A bathroom inside the home appeared to have been cleaned, and there was water on the floor and counters.

***Gang Expert's Testimony***

Fresno County Sheriff's Detective Andrew Simonson, an expert on Bulldog street gangs, testified for the prosecution.  Simonson had been assigned to the Multi-Agency Gang Enforcement Consortium known as MAGEC.

Simonson had 10 years of experience in the MAGEC unit and developed his expertise from various sources, including:  current and former gang members; witnesses of crimes and persons in the community; other officers' reports of gang-related activity; field identification (FI) cards; and studies or work by other agencies or gang experts, including other MAGEC detectives.  He had personal contacts of no less than several hundred Bulldog gang members.

Simonson estimated there were between 5,000 to 10,000 members in the Bulldog gang.  While there is no ranking system, structure, or hierarchy, the gang has members who are "more respected," and members who are "more official."  According to Simonson, the Lewis Street Bulldogs and the Vario Orange Cove Rifa (VOCR) Bulldogs are subsets of the Fresno Bulldogs.  These subsets differentiate themselves geographically, but they are all Bulldogs.  Their primary rivals are the Sureños and the Norteños.

Bulldog gang members often wear clothing with the Fresno State bulldog logo, and they predominately wear the color red.  Bulldogs often get tattoos of dog collars, the word "Bulldogs," and the letters "FC" for Fresno County, as well as the name of their subsets.  Lewis Street Bulldogs usually use the logo of the St. Louis Cardinals, a professional sports team.  They often use the letter "L," and to show their gang affiliation, they display (throw) "S" and "L" gang signs.

With the exception of the Bond Street Bulldogs, the Lewis Street Bulldogs get along with the other Bulldog subsets.  Members of various Bulldog subsets often commit

crimes together and will get together to "show off," or represent their gang affiliation. Simonson is personally aware of only a few VOCR gang members who associate with the Lewis Street Bulldogs, but he testified defendants (or their subsets) have a common bond.

Photographs introduced by the prosecutor showed individuals identified by Simonson as members of the Lewis Street Bulldogs wearing red clothing, throwing gang signs, and "hanging out" with members of the Fifth Street Bulldogs and the VOCR Bulldogs. One photograph depicted Andrade with two members of the Lewis Street Bulldogs, one of whom was dressed as a Catholic cardinal and the other was dressed as a St. Louis Cardinals baseball player.

Simonson opined the primary activities of the Bulldogs are possession of firearms, witness intimidation, vehicle theft, assault with a deadly weapon, and burglary. In proving the gang has a demonstrated "pattern of criminal activity," Simonson testified to five convictions of individuals whom he identified as Bulldog gang members. Two of the five predicate offenses were established based on defendants' prior convictions.

Simonson opined that both Andrade and Moreno were active members of the Bulldogs. Specifically, Andrade was a member of the Lewis Street Bulldogs, and Moreno was a member of the VOCR Bulldogs.

In determining whether a person is an active gang member, Simonson explained he looks at multiple indicators, including jail classifications; tattoos; documented associations with other known gang members; showing (throwing) of gang signs; whether the individual wears or owns gang clothing; and information from reliable sources, such as family members.

Following his arrest for the charged offenses, Andrade admitted to police he was a member of the Lewis Street Bulldogs. He had been previously classified by Fresno County jail officials as a member of the Lewis Street Bulldogs on five prior occasions, and a member of the Bulldogs in general on one prior occasion. Andrade went by the street moniker of "De Loc." He had multiple gang-related tattoos, including "St. Louis"

7.

above his left eye, "EBK" (everybody killer) on his hand, "2400" (representing the 2400 block of Lewis Street) tattooed across the top of his right hand, an "L" or "LST" on his chin, "LST" across his throat, and a dog collar with "LSD" (Lewis Street Dog) inside the tag. Simonson also formed his opinion based on a photograph of Andrade and other gang members flashing gang signs.

Based on Moreno's admission of gang membership, prior jail classifications, and his tattoos, Simonson opined Moreno was a member of the VOCR Bulldogs. Moreno identified himself as a member of the VOCR Bulldogs no less than 10 times in jail classifications. He was depicted in a photograph wearing a Cincinnati Reds hat, paraphernalia commonly worn by VOCR Bulldogs. Moreno had prior contacts with other gang members in the VOCR Bulldogs and members of the Lewis Street Bulldogs. Moreno also had multiple gang-related tattoos, including a bulldog face on top of his skull, a large bulldog face and a "P," which stands for park, on his left arm, and "BB," which stands for "blood" and "park boy blood," on his right triceps. VOCR gang members often have "park" tattoos because Park Boulevard is the main street in Orange Cove separating the town. Moreno also had a dog collar around his neck, "FC" (Fresno County) on his triceps, and "VOC" on his left biceps for "Vario Orange Cove."

Simonson further opined Roxanne Gonzales, the rear seat passenger in the Honda, was an active member of the Lewis Street Bulldogs. Gonzales self-admitted to being a Lewis Street Bulldog in the past, and she was depicted in two photographs throwing Lewis Street Bulldog gang signs with Andrade.

As part of his investigation in this case, Simonson listened to several jail-monitored phone calls between Andrade and Gonzales. The calls were placed two days after Andrade was arrested. During the call, Andrade asked Gonzales about items in the bushes along Golden State Boulevard, one of the roads on which the February 9th pursuit had taken place. Andrade made reference to a "'little pouch with goods'" and told Gonzales to "'[k]eep looking in the bushes.'"

8.

In Simonson's opinion, Andrade was associating with a gang because in committing the charged offenses, he was acting as a backup for Moreno, thereby promoting the gang and actively assisting Moreno's conduct. Specifically, Andrade had acted as backup to Moreno in the Santos shooting. Simonson also opined Moreno's evasion of police was gang related. He stated generally, evading can be a gang-related crime, assuming an individual was fleeing from the commission of other felonious acts. Successfully evading police would permit the perpetrator to dispose of evidence of the prior crimes and would build up the perpetrator's reputation within the gang. He also stated drive-by shootings of other (rival) gang members were inherently gang-related crimes.

Simonson based his opinion on the fact defendants were detained in a stolen vehicle, and he explained gang members often steal vehicles to use in other crimes. It helps them dispose of evidence of other crimes and, as Simonson had earlier testified, using a stolen vehicle prevents them from being identified during the commission of other crimes. Further, a ballistics vest, holster, and expended shell casings were found inside the stolen vehicle. This evidence, coupled with Simonson's personal knowledge of gang lifestyle, led him to conclude the charged offenses were gang related. Simonson testified gang members do not usually commit crimes alone and often rely on one another as a backup or to act as a lookout and to ensure a crime is successful. A gang member's failure to back up another gang member is considered a sign of weakness.

According to Simonson, Moreno was also acting for gang purposes in the commission of the felony evasion. By evading police, Moreno was bolstering his status within the gang. Further, evasion is a common tactic used by gang members to dispose of evidence of other crimes. Simonson also based his opinion on defendants' gang affiliation and the fact the Honda was linked to an earlier shooting of a Sureño, a rival gang member, in active gang territory.

9.

*The Kite*

Fresno County Sheriff's Deputy Nick Rhodes testified Andrade was caught attempting to send a written message through Moreno to a man named "Picas." Picas is a Lewis Street Bulldog. The message, referred to as a "kite," discussed gang politics and, according to Simonson, demonstrated Andrade and Moreno were working together.

*Stipulations*

Moreno stipulated he was driving the Honda on February 9th and Andrade stipulated he was the front seat passenger.

## DISCUSSION

### I. Admission of the Gang Expert's Testimony and the Confrontation Clause

Moreno contends the expert's testimony on facts essential to prove the gang allegation and substantive gang offense violated his Sixth Amendment right to confrontation. He argues the facts introduced through the gang expert were purportedly based on testimonial hearsay where he did not have the opportunity to cross-examine the out-of-court declarants. Andrade joins Moreno in this claim. Moreno specifically challenges Simonson's testimony as to his opinion (1) the felony evasion was committed for the benefit of the Bulldog gang; and (2) regarding the primary activities and predicate offenses of the Bulldogs.

#### A. Forfeiture

Defendants concede no objection was lodged to Simonson's expert testimony at trial on the grounds the testimony violated their right to confrontation. Trial counsel for Andrade filed a pretrial motion to exclude all gang evidence, asserting the probative value of the evidence was substantially outweighed by its prejudicial effect under Evidence Code section 352. This objection presented a legal issue different from that raised by an objection asserting the admission of certain testimony would violate the

10.

confrontation clause. (*People v. Riccardi* (2012) 54 Cal.4th 758, 827, fn. 33, abrogated on other grounds by *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.)

Defendants contend they have not forfeited their claim because it would have been futile to object. While it is true there is no duty to object when the existing state of the law would render an objection futile (*People v. Chavez* (1980) 26 Cal.3d 334, 350, fn. 5), defendants undermine their futility argument by asserting "at the time of [the] trial, the law was not fixed and there had been several cases recently decided by the United States Supreme Court regarding the Confrontation Clause. (See *Williams v. Illinois* (2012) 132 S.Ct. 2221; *Bullcoming v. New Mexico* (2011) 131 S.Ct. 2705; *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305.)" In the alternative, defendants argue trial counsel committed ineffective assistance of counsel for failing to object to Simonson's testimony on the grounds his statements violated the confrontation clause.

The absence of a specific objection to Simonson's testimony on the grounds it violated defendants' right to confrontation frustrates appellate review because we are left with an undeveloped record. When an objection is lodged below, as the proponent of the evidence the People have the burden to show the challenged evidence is not testimonial hearsay. (*Idaho v. Wright* (1990) 497 U.S. 805, 816.) However, when no objection is lodged, we cannot simply presume a witness related testimonial hearsay. Moreno concedes the specific source of information Simonson relied on and related to the jury in his testimony "is not clear." We must, therefore, conclude the issue has been forfeited. To the extent we are able to ascertain which statements defendants are specifically challenging, we address their argument only to explain why they have not demonstrated prejudice.

**B.    The Confrontation Clause**

The Sixth Amendment's confrontation clause grants a criminal defendant the right to confront adverse witnesses. (U.S. Const., 6th Amend.) Thus, the admission of

11.

testimonial hearsay is barred by the confrontation clause unless the speaker is unavailable to testify and the accused previously had the opportunity to cross-examine the speaker, or the accused has forfeited the right to do so by his or her own wrongdoing. (*Crawford v. Washington* (2004) 541 U.S. 36, 68 (*Crawford*).)

In addressing whether an out-of-court statement violates the confrontation clause, the court must consider (1) whether the statement is hearsay and, if so, whether the statement falls within a hearsay exception; and, (2) whether the statement is testimonial in nature, and, if so, whether one of the *Crawford* exceptions applies. (*People v. Sanchez* (2016) 63 Cal.4th 665, 670-671 (*Sanchez*).) "Hearsay" is an out-of-court statement, including a written verbal or oral expression, offered for the truth of the matter asserted. (Evid. Code, §§ 1200, subd. (a), 225.) Testimonial statements are those "made primarily to memorialize facts relating to past criminal activity, which could be used like trial testimony," while nontestimonial statements are "those whose primarily purpose is to deal with an ongoing emergency or some other purpose unrelated to preserving facts for later use at trial." (*Sanchez*, at p. 689.)

In *Sanchez*, our Supreme Court recently adopted the following rule: When an expert relates case-specific out-of-court statements to the jury, and the content of those statements are treated as true and accurate to support the expert's opinion, the statements are hearsay. *Sanchez* disapproved prior precedent to the extent it held an expert's opinion is not hearsay because any statements related by the expert go only to the basis of the expert's opinion. (*Sanchez*, *supra*, 63 Cal.4th at p. 686, fn. 13, disapproving *People v. Gardeley* (1996) 14 Cal.4th 605 on this point.) The court explained "an expert's testimony regarding the basis for an opinion *must* be considered for its truth by the jury." (*Sanchez*, *supra*, at p. 679.)

The court also clarified an expert is permitted to rely on hearsay in forming an opinion, and may tell the jury he did so in general terms. "What an expert *cannot* do is relate as true case-specific facts asserted in hearsay statements, unless they are

12.

independently proven by competent evidence or are covered by a hearsay exception." (*Sanchez, supra*, 63 Cal.4th at p. 686.) "Case-specific facts" are those which the expert has no independent knowledge of and relate "to the particular events and participants alleged to have been involved in the case being tried." (*Sanchez, supra*, at p. 676.) Typically, parties establish these facts by calling witnesses who have personal knowledge to testify to those facts. (*Ibid*.) The expert then renders an opinion as to what those facts may mean. Thus, the expert is simply prohibited from *supplying* those case-specific facts not within the expert's personal knowledge. (*Ibid*.)

In opining the defendant was an active gang member, the gang expert in *Sanchez* related the contents of statements made in a Street Terrorism Enforcement and Prevention Act (STEP) (§ 186.20 et seq.) notice. (*Sanchez, supra*, 63 Cal.4th at p. 696.) A STEP notice is issued to inform the recipient he or she is associating with a known gang member. In completing the STEP notice, the issuing officer made a sworn declaration under penalty of perjury that the representations made therein were true. (*Sanchez*, at pp. 696-697.) Although the STEP notices could serve many purposes, including a general community policing function, the court determined the notices were testimonial because they were signed under penalty of perjury and "memorialize[d] incriminating statements for future evidentiary use." (*Sanchez*, at p. 696.)

The gang expert also testified to the defendant's prior contacts with police. He learned about several of the prior contacts solely through police reports compiled during the investigation of completed crimes. (*Sanchez, supra*, 63 Cal.4th at p. 694.) The court held the contents of the police reports were testimonial—they were compiled during a police investigation of completed crimes, and the expert relied upon and related case-specific facts from a narrative by the investigating officer. (*Ibid*.)

The court further found field identification (FI) cards, used to show a defendant had a prior contact with police while in the company of a known gang member, could be testimonial if the card was produced during the course of an ongoing criminal

13.

investigation. (*Sanchez*, *supra*, 63 Cal.4th at p. 697.) The *Sanchez* court could not conclusively determine whether the card was produced in the course of an ongoing investigation, rendering it testimonial, because the circumstances surrounding the preparation of the FI card were unclear. (*Ibid.*)

**C. Analysis**

### 1. The expert's testimony opining defendants' crimes were committed for the benefit of a criminal street gang and defendants' active participation in a gang

Moreno contends the gang expert's testimony opining his crimes were committed for the benefit of a criminal street gang pursuant to the gang enhancement allegation violated the confrontation clause. Both defendants challenge the expert's testimony opining they were actively participating in a criminal street gang.

Although defendants fail to identify which statements related by Simonson constitute testimonial hearsay, Moreno argues the following:

> "[I]t is not clear from Detective Simonson's testimony the exact source of his information regarding the reason for the [Santos] shooting; the information regarding the gang's crime requirements; and its treatment of gang members willing to commit bold or violent acts. However, given his testimony, it is likely that he obtained this information by speaking to other law enforcement officers, gang experts, other gang members and victims. The law enforcement officers' information regarding the culture of the gang and the facts of the shooting likely came from statements obtained while investigating and collecting evidence, and with an eye toward criminal prosecutions. This information clearly was testimonial because it was collected and obtained during a police investigation with an eye toward the eventual prosecution of the individual responsible. And as Detective Simonson testified, the information on how the Bulldog gang operates came from interviews with gang members and victims, gained during the investigation of crimes or in anticipation of eventual criminal prosecutions."

Defendants misinterpret what is prohibited by the confrontation clause. As *Sanchez* explained, an expert is not permitted to *supply* case-specific facts about which he has no personal knowledge, however, the expert is permitted to give an opinion about

14.

what facts mean when those case-specific facts were given by witnesses with personal knowledge. (*Sanchez, supra*, 63 Cal.4th at p. 676.) "If an expert testifies to case-specific out-of-court statements to explain the bases for his opinion, those statements are necessarily considered by the jury for their truth, thus rendering them hearsay. Like any other hearsay evidence, it must be properly admitted through an applicable hearsay exception. Alternatively, the evidence can be admitted through an appropriate witness and the expert may assume its truth in a properly worded hypothetical question in the traditional manner." (*Sanchez, supra*, at p. 684, fn. omitted.)

In forming his opinion that the Santos shooting was gang related, Simonson relied on the facts (1) the occupants in the Honda were active gang members, (2) the Honda was stolen, (3) a ballistics vest, gun holster, and expended shell casings were found inside the Honda after the pursuit, (4) a rival gang member was shot in Orange Cove, "a very gang active area," just hours prior to the police pursuit of the Honda, and (5) the shell casings inside the Honda appeared to match bullet fragments found at the scene of the shooting. These facts were proven by independent competent evidence admitted at trial. Thus, it appears Simonson's recitation of these facts was cumulative.

The facts of the Santos shooting, the vehicle theft, and the felony evasion were facts supplied by witnesses with personal knowledge of the incidents. Officer St. Angelo, who responded to the Santos shooting, testified for the prosecution about the facts related to the shooting, and Officer Heckman testified as to the February 9th evasion incident. These witness were thoroughly cross-examined by defendants' trial counsel. If Simonson relied on and related additional facts not proven by the testimony of these witnesses or by other competent evidence, defendants fail to cite to specific portions of the record to demonstrate as much.

Simonson explained the significance of these facts to the jury based on his knowledge and expertise. According to Simonson, gang members, including Bulldog gang members, gain respect and status by committing violent acts and are constantly

15.

trying to prove themselves to other members in the gang by committing crimes. He testified drive-by shootings of rival gang members are almost inherently a gang-related crime, and car thefts are often perpetrated by gang members to commit drive-by shootings. Using a stolen car enables the perpetrator to avoid identification during the commission of other crimes. A crime like evading police could be a gang crime, assuming the vehicle was being used to flee from a felonious act or to dispose of evidence of those other crimes. This testimony was generalized information based on Simonson's personal knowledge and expertise.

Simonson's testimony Bulldog gang members commit violent crimes to gain respect and status within the gang, and that gang members constantly try to prove themselves to one another, was based on his knowledge and experience as a MAGEC detective. "In general, … expert testimony concerning the culture, habits, and psychology of gangs is permissible because these subjects are 'sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.'" (*People v. Valdez* (1997) 58 Cal.App.4th 494, 506.) Thus, so far, we find no violation of defendants' right to confrontation.

What Simonson was not permitted to do was to testify about whether Moreno or Andrade specifically acted for a gang reason. While an expert may express an opinion about whether the crimes, if committed, would have been committed for gang purposes, based on hypothetical questions closely tracking the evidence, the expert may not testify the defendants specifically acted for a gang reason. (*People v. Ewing* (2016) 244 Cal.App.4th 359, 382; *People v. Vang* (2011) 52 Cal.4th 1038, 1048 [expert may not testify whether a specific defendant committed a charged offense for gang purposes].) Testimony of this nature is of no assistance to the jury because ""'the trier of fact is as competent as the witness to weigh the evidence and draw a conclusion on the issue ….'"" (*Vang*, at p. 1048.)

Simonson testified about why gang members generally commit certain crimes, such as vehicle theft, drive-by shootings, and evading police, and on at least one occasion, he testified Moreno specifically committed the crime of felony evasion for the benefit of the Bulldogs. The former testimony is proper because it is generalized information based on Simonson's knowledge and personal experience, the latter testimony is not.

No objection was lodged below on this well-settled rule at trial, and no argument on this issue is raised on appeal. (*People v. Stevens* (2015) 62 Cal.4th 325, 333 ["the failure to object to the admission of expert testimony or hearsay at trial forfeits an appellate claim that such evidence was improperly admitted"]; Evid. Code, § 353 [prohibiting reversal unless "(t)here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion"].) Although we decline to reach the issue as a result, it appears the error is harmless beyond a reasonable doubt in light of Simonson's proper testimony, and because the case-specific facts Simonson recited were cumulative of the testimony of witnesses with personal knowledge of the facts who were subject to cross-examination.

### 2. *Primary activities and predicate offenses*

Defendants also claim their Sixth Amendment right of confrontation was violated when Simonson testified as to the gang membership status and convictions of other individuals to support the active participation gang charge as well as the gang enhancements to the other counts.

To prove the Bulldogs were a criminal street gang, the People must prove (1) the group is an ongoing association of three or more persons sharing a common name, identifying sign, or symbol; (2) one of the group's primary activities is the commission of two or more statutorily enumerated criminal offenses in section 186.22, subdivision (e);

17.

and, (3) the group's members engage in, or have engaged in, a pattern of criminal gang activity.  (§ 186.22, subd. (f).)  "'[S]ufficient proof of the gang's primary activities might consist of evidence that the group's members *consistently and repeatedly* have committed criminal activity listed in the gang statute.'  [Citation.]  [A] 'pattern' is established by the commission of two or more enumerated offenses committed on separate occasions or by two or more persons."  (*People v. Williams* (2009) 170 Cal.App.4th 587, 608–609.)

Simonson testified the primary activities of the Bulldogs include drive-by shootings, possession of prohibited weapons, witness intimidation, assault with a deadly weapon, vehicle theft, and burglary.  His opinion was based on his 10 years of experience in the MAGEC unit as a detective and his knowledge of multiple arrests, convictions, guilty/no contest pleas of Bulldog gang members, as well as statements from Bulldogs and members of rival gangs.  This testimony, primarily based on Simonson's personal knowledge, was permissible under *Crawford*.

The jury was instructed the primary activities of the Bulldogs and their pattern of criminal gang activity could be proven by the following predicate offenses:  possession of a deadly weapon, assault with a firearm, possession of a firearm by a felon, or vehicle theft.  The prosecutor elicited testimony from Simonson as to five offenses committed by individuals he opined were Bulldog gang members, two of the predicate offenses included defendants' prior convictions.

In 2011, Marcos Bakle was convicted of possession of assault rifles.  In 2010, Christopher Chavez pled guilty to possession of a firearm by a felon, conspiracy, as well as a substantive gang charge (§ 186.22, subd. (a)).  In 2012, Guadalupe Gilberto Moreno pled guilty to theft of a vehicle and a criminal street gang enhancement.  In 2004, Andrade pled guilty to two counts of assault with a deadly weapon (§ 245, subd. (a)(2)).  In 2005, Moreno pled guilty to possession of a deadly weapon (former § 12020).

The prior convictions were proven by records of conviction, which come within a hearsay exception as either business records (Evid. Code, § 1271), or the records of

18.

public employees (Evid. Code, § 1280). (*People v. Taulton* (2005) 129 Cal.App.4th 1218, 1225; *People v. Perez* (2011) 195 Cal.App.4th 801, 804.) To the extent defendants assert Simonson's opinion that Bakle, Chavez, and Guadalupe Gilberto Moreno are Bulldogs[2] is testimonial hearsay, they concede "Simonson did not specifically state how he knew these men were gang members." We decline to speculate what Simonson based his opinion on.

We note that while defendants challenge Simonson's testimony as to three of the predicate offenses on the basis of the confrontation clause, they do not address the fact the prosecutor also used defendants' own prior convictions as two of the five predicate offenses offered to prove the primary activities of the Bulldogs. At least one of defendants' prior convictions was sufficient to constitute a predicate offense: Andrade's 2004 conviction of assault with a deadly weapon, as this offense is enumerated within the designated gang offenses in section 186.22, subdivision (e)(1). Moreno's 2005 conviction for possession of a deadly weapon (a golf club) in violation of former section 12020, subdivision (a) does not qualify as a predicate offense because the crime is not one of the enumerated offenses under 186.22, subdivision (e).

## II. Admission of Evidence of the Santos Shooting, the November 25th Incident, and Andrade's Jail Classifications as a Gang Member

In phase II of the trial, the trial court permitted the prosecution to introduce evidence of two prior uncharged acts, as well as evidence showing Andrade had six jail classifications. Moreno contends admission of one of the prior acts, the Santos shooting, was introduced solely for the improper purpose of establishing defendants were predisposed to commit crimes. Andrade joins Moreno in his claim and also challenges

---

[2]Although we use the term "Bulldogs," Simonson testified Andrade was a member of the Lewis Street Bulldogs, Moreno was a member of the VOCR Bulldogs, and Guadalupe Gilberto Moreno was a member of the Lewis Street Bulldogs. Defendants do not challenge the sufficiency of the evidence showing associational or organizational connection uniting the subsets. (See *People v. Prunty* (2015) 62 Cal.4th 59.)

19.

the trial court's admission of the November 25, 2012, evasion incident as well as the court's admission of testimony he had six jail classifications as a gang member. Defendants' claims are without merit.

### A.    Background

On August 19, 2013, Andrade moved to bifurcate the gang evidence and to exclude evidence of the Santos shooting, arguing the only evidence linking him to the shooting was that he happened to be sitting in the front seat of the Honda two hours after it may have been used in the Santos shooting. At a hearing on the matter, he also objected to the "prior act where [defendants] are together [the November 25th evasion incident]" because there was no legal theory under Evidence Code section 1101, subdivision (b) to support the admission of this evidence. The court granted the motion to bifurcate and took the objection under submission.

On August 26, 2013, prior to the commencement of trial, the court issued a tentative ruling granting the People's in limine motion to admit evidence of the two prior uncharged acts. The court reiterated the prosecution would not be permitted to introduce any of the gang evidence in phase I of the trial, reasoning it was highly prejudicial to the vehicle theft/evasion case. However, the court granted the prosecutor's motion to admit evidence of the prior acts in phase II as evidence of knowledge and intent in relation to the gang charges. The court concluded the evidence would be "extremely probative" in phase II of the trial because the prior acts evidenced defendants' gang affiliation and defendants' purpose for using the Honda.

On September 3, 2013, after phase I of the trial concluded and prior to the beginning of phase II, counsel for Andrade filed a motion to dismiss the substantive gang charge (§ 186.22, subd. (a)), arguing there was insufficient evidence to show he willfully promoted, furthered, or assisted in any felonious criminal conduct. Andrade was acquitted of receiving stolen property (§ 496d), and the only felony Moreno was

20.

convicted of was felony evasion. Defense counsel for Andrade argued there was no evidence he aided and abetted Moreno in felony evasion because there was no evidence showing Andrade provided directions to Moreno or took action on his behalf to throw the police off guard.

The court denied the motion. It explained that although the jury acquitted Andrade of receiving stolen property, phase II would involve an expanded presentation of evidence. Moreover, the jury was not being asked to make a guilty finding on the receiving stolen property charge, it was being asked to consider the act in relation to whether Andrade had acted in furtherance of a gang. The court also explained evidence of the Santos shooting constituted evidence of felonious conduct committed in furtherance of a gang, as well as "prior act" evidence. The court stated it would be up to the jury to decide, based on circumstantial evidence, whether defendants were the individuals in the Honda at the time of the Santos shooting.

On September 4, 2013, the trial court heard further argument on the admission of the uncharged prior acts evidence. The court held the Santos shooting was admissible because it was relevant to whether Andrade assisted Moreno in felonious criminal conduct. The court held the November 25th incident had independent relevance for impeachment purposes. The court stated this evidence was also relevant to modus operandi and intent in relation to the substantive gang charges and enhancement allegation. Counsel for Andrade and Moreno both lodged objections to the court's ruling.

The court ultimately instructed the jury pursuant to CALCRIM No. 1403 as follows:

> "You may consider evidence of gang activity only for the limited purpose of deciding whether:
>
> "The defendant acted with the intent, purpose, and knowledge that are required to prove the gang-related crime and enhancement charged.

21.

"You may also consider this evidence when you evaluate the credibility or believability of a witness and when you consider the facts and information relied on by an expert witness in reaching his or her opinion.

"You may not consider this evidence for any other purpose. You may not conclude from this evidence that the defendant is a person of bad character or that he has a disposition to commit crime."

Thus, it appears the trial court ultimately admitted evidence of the prior acts for the limited purposes of intent, purpose, and knowledge in relation to proving the substantive gang charges and enhancement allegation.

## B. Analysis

"Gang evidence is relevant and admissible when the very reason for the underlying crime, that is the motive, is gang related. [Citations.] "'[B]ecause a motive is ordinarily the incentive for criminal behavior, its probative value generally exceeds its prejudicial effect, and wide latitude is permitted in admitting evidence of its existence." [Citations.]'" (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1167-1168; see *People v. Valdez* (2012) 55 Cal.4th 82, 138.)

We review a trial court's evidentiary rulings for abuse of discretion and will reverse only if the ruling was arbitrary, whimsical, or capricious as a matter of law. (*People v. Robertson* (2012) 208 Cal.App.4th 965, 991.) We find no abuse of discretion here.

### 1. The Santos shooting

Defendants contend evidence of the Santos shooting was inadmissible character evidence, and the evidence was unduly prejudicial. The People assert the issue has been forfeited because defendants failed to preserve the issue for appeal, but contend evidence of the Santos shooting was, nonetheless, admissible. We find the issue was preserved for appeal and conclude the trial court did not abuse its discretion in admitting evidence of the shooting.

22.

To prove a substantive gang charge, the People must prove, in part, that "the defendant[s] willfully assisted, furthered, or promoted felonious criminal conduct by members of the gang …." (CALCRIM No. 1400; see § 186.22, subd. (a).) To prove a gang enhancement allegation the People were required to prove, among other elements, the defendant harbored the "specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).) Here, the trial court admitted evidence of the Santos shooting for two purposes. First, as evidence both defendants "willfully assisted, furthered, or promoted felonious conduct" by gang members; and second, as evidence Moreno harbored the "specific intent to promote, further, or assist in … criminal conduct by gang members." (*Ibid*.) As we explain below, evidence of the shooting had substantial probative value as to material and disputed issues in phase II of the trial.

The jury could reasonably infer the Santos shooting was a gang-related crime, that Mendoza's Honda was stolen to commit this crime, and that defendants were connected to the crime, even if they did not perpetrate the shooting or the initial theft of Mendoza's Honda. Simonson testified gang members commonly steal cars to commit other crimes to avoid identification and to dispose of evidence, that drive-by shootings of rival gang members are almost inherently gang-related crimes, and that felony evasion of police may be perpetrated by gang members for several reasons, including: to bolster the individual's status within the gang, to flee the commission of other felonious acts, and to dispose of evidence from other crimes. While the prosecutor could not prove defendants perpetrated the earlier shooting and the jury acquitted defendants of the vehicle theft offenses, the jury could infer defendants were connected to these crimes based on circumstantial evidence. A ballistics vest, empty gun holster, expended shell casings, and eight shaved keys were discovered in the vehicle after the pursuit. Further, the Honda was running without a key in its ignition, a condition putting a reasonable person on notice of the fact a vehicle had been stolen.

23.

Defendants contend the conclusion that they were involved in the Santos shooting was "speculation at best" because there was no evidence they were in the Honda at the time of the incident or were otherwise involved with the crime. The record demonstrates the trial court carefully considered the fact that while substantial evidence linked the Honda to the Santos shooting, only circumstantial evidence supported the conclusion defendants were actually in the Honda at the time the shooting occurred. It ultimately held it would be up to the jury to determine whether the evidence showed defendants were actually involved with the shooting. In other words, it was for the jury to determine what weight, if any, the evidence should be given.

We conclude, given the time and location of the shooting in proximity to the pursuit, the jury could reasonably conclude, without speculating, that defendants were involved in the Santos shooting. Officer St. Angelo testified shell casings found inside the Honda matched bullet fragments found at the scene of the shooting, the Honda matched the description of the vehicle involved in the shooting, and defendants were detained driving the stolen Honda within several hours of the incident. While this evidence is reasonably susceptible to a contrary finding, we reverse only if under no hypothesis whatsoever is there sufficient evidence to support the conviction. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Defendants also contend the evidence should have been excluded under Evidence Code section 352 because it was unduly prejudicial. As our Supreme Court held in *People v. Carter* (2003) 30 Cal.4th 1166, 1194: "Although evidence of a defendant's gang membership creates a risk the jury will improperly infer the defendant has a criminal disposition and is therefore guilty of the offense charged—and thus should be carefully scrutinized by trial courts—such evidence is admissible when relevant to prove identity or motive, if its probative value is not substantially outweighed by its prejudicial effect." As noted, the gang evidence here was essential to the gang enhancement

allegation and substantive gang charge as it established the motive for the charged crimes.

Moreover, the prejudice Evidence Code section 352 is designed to protect against is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.

> "'[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging."'" (*People v. Karis* (1988) 46 Cal.3d 612, 638.)

Here, evidence of the Santos shooting was not disproportionately inflammatory considering its probative value to defendants' intent in evading police. "'[B]ecause a motive is ordinarily the incentive for criminal behavior, its probative value generally exceeds its prejudicial effect, and wide latitude is permitted in admitting evidence of its existence.'" (*People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1550; see *People v. Martinez* (2003) 113 Cal.App.4th 400, 413.) "Accordingly, when evidence of gang activity or affiliation is relevant to motive, it may properly be introduced *even if prejudicial*." (*People v. Garcia* (2008) 168 Cal.App.4th 261, 275, italics added.)

We also observe the jury was instructed pursuant to CALCRIM No. 1403. The instruction states in no uncertain terms that gang evidence is inadmissible to show the defendants are bad persons or have a criminal propensity. It allows such evidence to be considered only on the issues germane to the gang enhancement: the motive for the crime and the credibility of witnesses. (*Ibid*.) We presume jurors are intelligent people, capable of understanding the instruction and applying it to the facts of this case. (*People v. Tatman* (1993) 20 Cal.App.4th 1, 10–11.) We conclude the trial court did not abuse its discretion in admitting evidence of the Santos shooting.

25.

### 2. *November 25th incident*

#### (a) *Background*

In phase I of the trial, evidence of the November 25th incident was admitted to show Andrade lied to police when he told them following the police pursuit he did not know who the driver of the Honda was. Evidence Andrade knew Moreno was directly relevant to whether he received stolen property in violation of section 496d, subdivision (a). In phase II, the trial court concluded evidence of the incident was admissible both for purposes of impeachment, and as Evidence Code section 1101, subdivision (b) evidence of modus operandi and intent.

#### (b) *Analysis*

Andrade contends evidence of the November 25th incident leading to a police pursuit of defendants was improperly admitted. The People disagree and assert the issue has been forfeited. We find the issue was properly preserved for appeal and conclude the trial court did not abuse its discretion in admitting evidence of the prior evasion incident.

Although the relevance of this evidence became less clear because the court ultimately limited the facts of the prior incident so as not to prejudice defendants, the evidence showed defendants had worked together on a prior occasion. Andrade told police he did not know Moreno after Andrade was apprehended following the police pursuit but before Moreno was caught. The prior incident showed Andrade's statement to police was untruthful. While not dispositive of guilt, false statements evidence a consciousness of guilt. Thus, the evidence was at least probative of the fact Andrade made a false statement to police.

In any event, Andrade has failed to show prejudice as a result of the trial court's admission of the November 25th incident. He asserts, without explanation, "the evidence that the trial court admitted under [Evidence Code] section[s] 1101(b) and … 352 was prejudicial because without it, the prosecution … had no evidence to substantiate its allegation that [Andrade] aided and abetted [Moreno]." Andrade was a passenger in a

stolen vehicle just hours after a member of a rival gang was shot in gang territory, and substantial evidence linked the vehicle to the shooting. As discussed in part III, *post*, the jury could reasonably conclude, without evidence of the November 25th incident, that Andrade actively participated in a criminal street gang by aiding and abetting Moreno's felonious conduct. We reject Andrade's argument that admission of evidence of the November 25th incident was an abuse of the trial court's discretion.

### 3. *Jail gang identification cards*

Andrade asserts the jail classifications should have been excluded because they were cumulative and highly prejudicial since this evidence informed the jury he had been arrested on at least six prior occasions. He acknowledges that "'[e]ven without the jail classification evidence, there was compelling proof … that [he] was guilty of the gang participation crime in count five.'" We reject his claim.[3]

The People assert Andrade failed to lodge an objection below and, as a result, the claim is forfeited. Andrade claims his objection was made clear in his motion to exclude evidence, which was denied by the trial court. From the record, it appears an objection was lodged by defense counsel during trial, however, the basis for the objection was not specified. When the prosecution asked how many times Andrade had been jail classified, Simonson responded, "No less than six." Defense counsel objected to the testimony of "six," but failed to state a basis for his objection. The trial court overruled the objection "based on previous rulings." However, Andrade's pretrial motion to exclude evidence challenged the jail classifications based only on information in the forms, such as the fact

---

[3]In June 2015, our Supreme Court unanimously ruled in *People v. Elizalde* (2015) 61 Cal.4th 523, 527, 533-540 (*Elizalde*), certain admonitions must be given before a suspect's statement made during a custodial interrogation can be admitted in the prosecution's case-in-chief. Andrade does not assert the trial court erred in admitting his prior jail classifications on this basis. However, had Andrade objected to the jail classifications on the basis of *Elizalde*, we would have found any error as a result of admission of the jail classifications was harmless. Andrade concedes there was compelling proof of his active gang membership status.

he was in the "SHU," information relating to the nature of his prior felony convictions, and the fact he was housed in the "MMAX POD." The trial court agreed this information was irrelevant and unduly prejudicial and granted the motion. Andrade did not previously object to evidence he was classified as a Lewis Street Bulldog on six prior occasions. Although Andrade's objection is forfeited, we conclude evidence of the jail classifications was not needlessly cumulative, nor was it unduly prejudicial.

While the jury heard other evidence as to Andrade's active gang membership status, jail classifications are generally one of the most significant factors used by gang experts to determine whether a person is a gang member. Because Andrade's status as an active gang member was a material and disputed issue at trial, the evidence of his six prior jail classifications was relevant evidence.

Moreover, the jury heard limited information in relation to the jail classifications. Simonson testified Andrade had self-admitted to gang membership pursuant to the jail classifications no less than six times and that his moniker was "De Loc." With the exception of one of Andrade's prior convictions—used to establish one of the predicate offenses of the gang—the jury heard no evidence as to the nature of Andrade's prior crimes or his sentence as a result of the crimes. Thus, we reject Andrade's claim and conclude the trial court did not abuse its discretion in admitting evidence of his jail classifications.

### III.    Andrade's Substantive Gang Conviction (§ 186.22, subd. (a))

#### A.    Introduction

Section 186.22, subdivision (a) makes it a crime to "actively participate[] in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang." The substantive gang offense comprises three elements: (1) active participation in a criminal street gang; (2)

knowledge the gang's members have engaged in a pattern of criminal gang activity; and (3) the willful promotion, furtherance, or assistance of any felonious criminal conduct by members of that gang. (*People v. Lamas* (2007) 42 Cal.4th 516, 523 (*Lamas*).) A defendant "may promote, further, or assist in the felonious conduct by at least two gang members by either (1) directly perpetrating the felony with gang members or (2) aiding and abetting gang members in the commission of the felony." (*People v. Johnson* (2014) 229 Cal.App.4th 910, 920-921.)

Andrade does not dispute the first two elements of the substantive gang charge are met. He contends the third element of section 186.22, subdivision (a) has not been met because he was acquitted of the only other felony with which he was charged: receipt of stolen property (§ 496d). He also asserts the court prejudicially erred in instructing the jury it could consider this offense in determining whether the substantive gang offense was proven.

We reject Andrade's contention that acquittal of the only other felony he was charged with precludes conviction on the substantive gang charge. We conclude substantial evidence supports the jury's finding Andrade willfully promoted, furthered, or assisted in felonious criminal conduct by gang members. We also conclude the court's instruction to the jury that it could consider the offense Andrade was acquitted of (receipt of stolen property) in determining whether he willfully promoted, furthered, or assisted in felonious criminal conduct by gang members was harmless error.

## B. Elements of Participation in Criminal Street Gang Offense

Andrade contends *Lamas*, *supra*, 42 Cal.4th 516 and *People v. Sifuentes* (2011) 195 Cal.App.4th 1410 (*Sifuentes*) imply that in order to be found guilty of a substantive gang offense, the defendant must also be found guilty of an underlying felony offense. We disagree.

29.

*Lamas* and *Sifuentes* did not directly address the issue before this court. In *Lamas*, the defendant was charged with four felonies: (1) active participation in a gang (§ 186.22, subd. (a)); (2) active gang member carrying a loaded firearm in public (former § 12031, subd. (a)(2)(C)); (3) active gang member carrying concealed firearm on his person (former § 12025, subds. (a)(2), (b)(3)); (4) and receiving stolen property (§ 496, subd. (a)). (*Lamas*, *supra*, 42 Cal.4th at pp. 520-521.) The jury was instructed that "felonious criminal conduct" for purposes of the substantive gang charge (§ 186.22, subd. (a)) included "'carrying a loaded firearm in a public place by a gang member [(former § 12031, (a)(2)(C))], possession of stolen property [§ 496, subd. (a)], or … carrying a concealed firearm by a gang member [(former § 12025, subds. (a)(2), (b)(3))]." (*Lamas*, at p. 525.) The jury instruction, however, removed the element requiring involvement in felonious criminal conduct and permitted the jury to find the defendant either perpetrated or aided and abetted misdemeanor offenses (the gun charges).

The jury found the defendant guilty of the substantive gang charge and the gun offenses, but not guilty of receipt of stolen property and found not true the gang enhancement allegation. (*Lamas*, *supra*, 42 Cal.4th at p. 521.) The *Lamas* court held that carrying a loaded or concealed firearm in public (the gun offenses) cannot serve as the felonious criminal conduct necessary to prove a violation of section 186.22, subdivision (a). (*Lamas*, *supra*, 42 Cal.4th at p. 519.) The offenses were misdemeanors and did not elevate to felonies *until* all of the elements of the substantive gang offense had been proven. (*Id*. at p. 521; *People v. Robles* (2000) 23 Cal.4th 1106, 1115.) However, the misdemeanor possession charges were used as the felonious criminal conduct necessary to establish the third element of section 186.22, subdivision (a). (*Lamas*, at p. 521.) In other words, the gun offenses and substantive gang charge were bootstrapped to one another.

The *Lamas* court declined to address whether the felonious conduct requirement in section 186.22, subdivision (a) could be satisfied with uncharged conduct occurring

contemporaneously with or prior to the charged offenses because there was no evidence the defendant engaged in any felonious conduct, either concurrently with or prior to his misdemeanor gun offenses. (*Lamas*, *supra*, 42 Cal.4th at p. 526, fn. 9.) Notably, the court did not consider whether possession of stolen property could be used to satisfy the felonious conduct requirement because the jury had acquitted the defendant of that offense. (*Id*. at p. 522, fn. 5.)

In *Sifuentes*, the appellate court found insufficient evidence to support the defendant's conviction for being a felon in possession of a firearm. (*Sifuentes*, *supra*, 195 Cal.App.4th at p. 1419.) The felony offense was the only offense the prosecutor relied on to prove the defendant willfully promoted, furthered, or assisted in criminal conduct by gang members. (*Id.* at pp. 1419-1420.) As a result, the appellate court reversed the defendant's gun possession conviction and the active gang participation conviction. (*Id*. at p. 1420.)

Contrary to Andrade's assertion, neither *Lamas* nor *Sifuentes* stands for the proposition that acquittal of a predicate felony charge necessitates dismissal of a substantive gang conviction. Only in a footnote did the *Lamas* court state it did not consider the offense the defendant had been acquitted of in determining whether the substantive gang charge was supported by substantial evidence. (*Lamas, supra,* 42 Cal.4th at p. 522, fn. 5.) Because no explanation was provided, no rule can be drawn from this footnote.

In our view, if a jury renders inconsistent verdicts by finding a defendant guilty of a substantive gang charge, but not guilty of the felony charge used to prove the gang conviction, both verdicts must be upheld if there is substantial evidence in the record to support the conviction. This conclusion is consistent with section 954: "An acquittal of one or more counts shall not be deemed an acquittal of any other count."

Inconsistent verdicts are generally accepted as an occasional product of our criminal justice system. (*People v. Palmer* (2001) 24 Cal.4th 856, 860.) "[I]f an

acquittal of one count is factually irreconcilable with a conviction on another, or if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense, effect is given to both." (*People v. Santamaria* (1994) 8 Cal.4th 903, 911.) The "[justice] system accepts the possibility that 'the jury arrived at an inconsistent conclusion through "mistake, compromise, or lenity."'" (*People v. Guerra* (2009) 176 Cal.App.4th 933, 943.) When a defendant is acquitted of a predicate felony offense but a substantive gang charge or enhancement allegation is found true, it is impossible to say which verdict was not the result of a mistake. Thus, we conclude a jury's verdict acquitting a defendant of a predicate felony offense does not necessarily require dismissal of a substantive gang conviction.

Importantly, Moreno, also a Bulldog gang member, was convicted of felonious conduct: felony evading. As we shall explain below, unlike in *Sifuentes*, there is substantial evidence here to support a finding Andrade aided and abetted Moreno in this felonious activity. Because this theory and supporting evidence was presented to the jury, we see no reason it cannot support the finding Andrade willfully promoted, furthered, or assisted in felonious criminal conduct by members of the Bulldog gang.

## C.      Sufficiency of the Evidence Supporting the Substantive Gang Charge

In considering a challenge to the sufficiency of the evidence to support a substantive gang offense, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Wilson* (2008) 44 Cal.4th 758, 806.) We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. (*Ibid*.) If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the

circumstances might also reasonably be reconciled with a contrary finding. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

Here, the jury was instructed that five acts could constitute felonious criminal conduct: (1) evading a peace officer (Veh. Code, § 2800.2, subd. (a)); (2) driving or taking a stolen vehicle (Veh. Code, § 10851, subd. (a)); (3) receiving stolen property (§ 496); (4) discharging a firearm from a motor vehicle; and (5) assault with a firearm (§ 245). The prosecution advised the jury that it need not agree on which one of the acts supported the jury's verdict, and the jury instruction made clear defendants could be found to have committed the acts as either a direct perpetrator or as an aider and abettor.[4]

Andrade contends the trial court prejudicially erred in instructing the jury it could consider the offense of receipt of stolen property in determining whether Andrade willfully promoted, furthered, or assisted in felonious criminal conduct (§ 186.22, subd. (a)). While inconsistent verdicts are generally accepted, we express doubt the jury's verdict here could simply be attributed to "mistake, compromise, or lenity." (*People v. Guerra*, *supra*, 176 Cal.App.4th at p. 943.) The jury was specifically instructed it could

---

[4]We invited the parties to submit supplemental letter briefing on whether the court was required to give a unanimity instruction as to the felonious criminal conduct underlying the substantive gang charge against Andrade. After reviewing the parties' briefs and the arguments therein, we conclude no instruction was required.

Under the California Constitution, a unanimous jury verdict is required to convict a person of a criminal offense. (Cal. Const., art. I, § 16; *People v. Russo* (2001) 25 Cal.4th 1124, 1132.) In deciding whether to give a unanimity instruction, the trial court must determine whether "(1) there is a risk the jury may divide on *two discrete crimes* and not agree on any particular crime or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a *single discrete crime*." Only in the first scenario is the instruction required. (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 570.) The gravamen of the substantive gang offense under section 186.22, subdivision (a) is active participation in a criminal street gang, which is more than nominal or passive involvement. (*People v. Albillar* (2010) 51 Cal.4th 47, 55; *People v. Rodriguez* (2012) 55 Cal.4th 1125, 1131 [statute targets "any felonious criminal conduct"].) Thus, the one discrete criminal event the jury had to agree on was whether Andrade actively participated in a criminal street gang by either aiding and abetting other gang members in committing a felony or by directly committing a felony.

33.

consider the act of receipt of stolen property in deciding whether Andrade was guilty of the substantive gang offense.

While we agree with the trial court's assertion this did not technically violate defendant's protection against double jeopardy, this was error.[5] The prosecution is required to prove each element of a charged offense beyond a reasonable doubt. (*People v. Osband* (1996) 13 Cal.4th 622, 742.) If an act presented to the jury as "felonious criminal conduct" under subdivision (a) of section 186.22 has not, or cannot be proven beyond a reasonable doubt, this would presumably lower the prosecutor's burden. The jury previously acquitted Andrade of the offense of receipt of stolen property and the theory should not have been presented to the jury to support the substantive gang offense.

Nonetheless, we conclude the error was harmless. Reversal is required only if it is reasonably probable the result would have been more favorable to the defendant had the error not occurred. (*People v. Guiton* (1993) 4 Cal.4th 1116, 1130 [applying *Watson* standard of review to a factually inadequate theory of guilt presented to the jury]; *People v. Perez* (2005) 35 Cal.4th 1219, 1233 ["We will affirm 'unless a review of the entire record affirmatively demonstrates a reasonable probability that the jury in fact found the defendant guilty solely on the unsupported theory.'"].) Here, multiple theories were presented to the jury as to how Andrade assisted in felonious conduct by gang members, including by aiding and abetting Moreno in felony evasion.[6]

---

[5]Double jeopardy is implicated in a subsequent trial. Here, although the trial was bifurcated, only one trial occurred. "[B]ifurcation separates issues in a trial, but it does not, unlike severance, produce two causes to be heard in two separate trials." (*People v. Saunders* (1993) 5 Cal.4th 580, 598 [Mosk, J., dissenting]. The high court has never suggested the doctrine applies to the same proceeding. Indeed, it has consistently stated it applies to "successive prosecutions." (*People v. Santamaria*, *supra*, 8 Cal.4th at p. 913.)

[6]We reject Andrade's assertion that the prosecutor emphasized the theory of receipt of stolen property to support the substantive gang charge against Andrade. Andrade bases this conclusion on the following statement made by the prosecutor in closing: "I am asking you to find that [Andrade] aided and abetted … Moreno in the taking of the stolen vehicle. and he aided and abetted in receiving stolen property." However, the prosecutor subsequently stated, "What I am really trying to say is, Ladies and Gentlemen, you know … Andrade and … Moreno evaded

Resolving all conflicts in the evidence and all reasonable inferences in favor of the judgment below, we conclude substantial evidence supports the conclusion Andrade aided and abetted felony evasion. "'We may conclude that there is no substantial evidence in support of conviction only if it can be said that on the evidence presented no reasonable fact finder could find the defendant guilty on the theory presented.'" (*People v. Campbell* (1994) 25 Cal.App.4th 402, 408.) Whether a defendant's conduct constitutes aiding and abetting is determined by evaluating whether the person directly or indirectly aided the perpetrator by acts or encouraged him or her by words or gestures. (*Id.* at p. 411.) Although presence at the scene of the crime is not alone enough to establish aider and abettor status, it is a factor that may be considered, along with companionship with the perpetrator and conduct before and after the crime. (*Id.* at p. 409.)

From the evidence, the jury could reasonably have concluded Andrade participated in a common criminal mission along with fellow gang members Moreno and Gonzales. Just hours before the police pursuit, a shooting of a rival gang member occurred in Orange Cove, a very active gang area. There was substantial evidence linking Mendoza's stolen Honda to the shooting, including shell casings matching bullet fragments found at the scene of the shooting, a bulletproof vest, and an empty gun holster. Videotape surveillance also appeared to depict a black four-door Honda pulling up to Santos, which caused him to turn in the opposite direction, run, and break stride, presumably, as he was struck by a bullet.

Defendants were located in the stolen Honda within several hours of the shooting. From this evidence, the jury could infer defendants were connected to the shooting. During the pursuit, one of the vehicle's occupants threw an unidentified bag outside the vehicle, and just a few days after defendants were arrested, Andrade contacted Gonzales

police," and later added, "[T]hey were all trying to evade the police." The transcripts evince that the prosecutor did not elect or emphasize any one particular theory of guilt, but instructed the jury any one of the five acts presented could support a guilty verdict.

from jail and instructed her to "'[k]eep looking in the bushes'" along Golden State Boulevard for a "'little pouch with goods.'" During the pursuit, defendants had traveled along Golden State Boulevard.

After the Honda became stuck during the pursuit, Moreno fled from police. Andrade also "attempted to crawl away." Andrade told police he did not know Moreno—while police were still attempting to locate Moreno—even though Andrade had been apprehended with him following a prior evasion incident in Orange Cove.

Andrade asserts this evidence was insufficient to show he aided and abetted Moreno in felony evasion because "[h]e did absolutely nothing to delay or hinder the police as they chased the car or when they chased [Moreno] after he fled the scene." We disagree. Andrade told police he did not know Moreno while police were still searching for Moreno. While Andrade's efforts to aid and abet Moreno may have ultimately been unsuccessful, the jury could reasonably infer from the circumstances prior to the police chase and Andrade's conduct afterwards that he was intent on escaping and thus encouraged Moreno, as the driver, to drive in whatever manner was necessary to elude the police, regardless of the danger. Accordingly, we conclude ample evidence supports the jury's guilty verdict on the substantive gang offense against Andrade. (*People v. Campbell*, *supra*, 25 Cal.App.4th at p. 408 [where sufficient evidence supports one of the factual theories of guilt asserted by prosecution, appellate courts presume jury adopted that theory and affirm the judgment].)

## IV. Presentence Custody Credits

Andrade initially asserted the trial court did not calculate his presentence credits. He claimed he was awarded 513 days of presentence credits, but he should have been awarded 676 days. The People explained that on January 28, 2015, the trial court awarded Andrade 677 days of presentence credits. The People assert, and Andrade agrees, this issue has been resolved. Thus, we do not address it.

36.

**DISPOSITION**

The judgment is affirmed.

_____
PEÑA, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
POOCHIGIAN, J.